**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 5, 2024**

# In the Court of Appeals of Georgia

A23A1467. AUGUSTA JUDICIAL CIRCUIT OFFICE OF THE PUBLIC DEFENDER v. HODGE-PEETS.

MARKLE, Judge.

Necia Hodge-Peets sued the Augusta Judicial Circuit Office of the Public Defender (OPD) for violations of the Americans with Disabilities Act of 1990, as Amended (ADAAA), 42 USCA § 12101, et seq.[1] OPD moved to dismiss the complaint, contending that the claims were barred by sovereign immunity. The trial court denied the motion, finding that OPD had waived its sovereign immunity to Hodge-Peets's federal claims pursuant to *Williamson v. Dept. of Human Resources*,

---

[1] The Americans with Disability Act of 1990 (ADA) prohibits disability discrimination in many spheres, including housing, public services, and education. 42 USCA § 12101 (a) (3), (b) (1). Title I addresses disability discrimination in employment. 42 USCA §§ 12111 to 12117. The ADA was amended in 2008 to incorporate a broader definition of disability. Pub. L. 110-325 § 2 (b) (1).

where we held that the State had waived its immunity to suit under federal disability discrimination claims by consenting to suit under a state disability discrimination act. 258 Ga. App. 113, 116 (1) (572 SE2d 678) (2002). On appeal, OPD contends that *Williamson* was incorrectly decided and should be overturned. For the following reasons, we agree that *Williamson* was wrongly decided, and we further conclude that OPD's sovereign immunity to claims under the ADAAA has not been waived. We thus reverse the trial court's judgment.[2]

"Whether sovereign immunity has been waived under the undisputed facts of this case is a question of law, and this Court's review is de novo." *Ga. Dept. of Labor v. RTT Assocs.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016).

As alleged in the complaint, Hodge-Peets was employed as an administrative assistant with OPD when she was diagnosed with breast cancer. After missing work due to her illness, she was twice demoted, received a disciplinary write-up for her absences, and was ultimately terminated for absenteeism. Thereafter, Hodge-Peets

---

[2] We have circulated this decision amongst all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required numbers of judges, however, voted in favor of considering this case en banc.

sued OPD in the Superior Court of Richmond County,[3] asserting claims for discrimination, failure to accommodate, and retaliation under the ADAAA, and seeking monetary damages.

OPD moved to dismiss the complaint, asserting its sovereign immunity to these federal claims. The trial court denied the motion, citing to *Williamson* for its holding that the General Assembly had waived a state actor's sovereign immunity to federal discrimination claims by enacting the Fair Employment Practices Act (FEPA), OCGA § 45-19-20, et seq. The trial court issued a certificate for immediate review, and we granted OPD's subsequent application for interlocutory appeal. This appeal followed.[4]

---

[3] Hodge-Peets also sued the Augusta-Richmond County Consolidated Government, but it is not a party to this appeal.

[4] This is the second appearance of this case on our docket. In Case No. A22A1272, we originally granted OPD's application for interlocutory appeal, but then vacated the order and transferred the application for interlocutory appeal to the Supreme Court of Georgia, having determined the issues raised on appeal invoked that Court's constitutional question jurisdiction. See Ga. Const. of 1983, Art VI, Sec. VI, Par. II (1). Our Supreme Court then returned the appeal after determining that the constitutional issue was not of first impression. See *Atlanta Independent School System v. Lane*, 266 Ga. 657, 657-658 (1) (469 SE2d 22) (1996). We again granted OPD's application for interlocutory appeal, and the subject appeal was docketed.

On appeal, OPD argues that the trial court erred by ruling that it had waived its sovereign immunity to claims under the ADAAA because *Williamson*, on which the trial court relied, was wrongly decided. We agree.

"Sovereign immunity is the immunity provided to governmental entities and to public employees sued in their official capacities." (Citation omitted.) *Griffith v. Robinson*, 366 Ga. App. 869, 870 (2) (884 SE2d 532) (2023).

> Whether a [government entity] has waived sovereign immunity is a threshold issue and not a mere defense to liability. A waiver of sovereign immunity must be established by the party seeking to benefit from that waiver, and when a litigant fails to bear this burden, the trial court must dismiss the complaint pursuant to OCGA § 9-11-12 (b) (1) for lack of subject-matter jurisdiction.

(Citations and punctuation omitted.) *Ramos v. Owens*, 366 Ga. App. 216, 217-218 (881 SE2d 464) (2022).

OPD concedes that the trial court was bound by *Williamson* to conclude the legislature had waived the State's sovereign immunity to Hodge-Peets's federal disability discrimination claims. Under our rationale in *Williamson*, by waiving the State's sovereign immunity to state disability discrimination claims under the FEPA, the General Assembly necessarily waived the State's sovereign immunity to

corresponding federal claims. *Williamson*, 258 Ga. App. at 116 (1). To find otherwise, we wrote, "would discriminate against federally based rights which the Supremacy Clause of the Constitution of the United States forbids states to do." Id.

We now conclude that *Williamson* was wrongly decided because (1) the Supremacy Clause did not demand our decision there; (2) the State is entitled to Eleventh Amendment immunity to ADAAA claims; and, (3) by enacting the FEPA, the State did not consent to suit under the ADAAA.

1. *The Supremacy Clause.*

The Supremacy Clause provides that the United States Constitution and ensuing federal laws "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby"regardless of any conflicting state laws. U. S. Const., Art. VI, cl. 2.

However, the United States Supreme Court has explained that the Supremacy Clause does not preclude a state's assertion of sovereign immunity to federal claims in state courts:

> The Constitution, by delegating to Congress the power to establish the supreme law of the land when acting within its enumerated powers, does not foreclose a State from asserting immunity to claims arising under federal law merely because that law derives not from the State itself but

from the national power. . . . We reject any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States. When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States.

*Alden v. Maine*, 527 U. S. 706, 732 (II) (A) (1) (119 SCt 2240, 144 LE2d 636) (1999).

As *Alden* makes clear, the Supremacy Clause does not demand a waiver of immunity here. Accordingly, we disapprove of *Williamson* to the extent that it based its holding on the Supremacy Clause.[5] 258 Ga. App. at 116 (1); see *Echols v. Ga. Piedmont Technical College*, No. 1:20-cv-02794-TWT-AJB, 2021 WL 1521987, at *7 (III) (C) (N.D. Ga. Jan. 22, 2021), report and recommendation adopted in part, rejected in part, *Echols v. Ga. Piedmont Technical College*, 2021 WL 870717 (N.D. Ga. Mar. 9, 2021) (unpublished) (noting that the Supremacy Clause analysis in *Williamson* is "questionable").

---

[5] We further note that *Williamson* overstated the holding in *Alden* by concluding that the "state enjoyed sovereign immunity as to [federal] claims . . . because it had not waived sovereign immunity as to comparable actions under state law." *Williamson*, 258 Ga. App. at 116, n. 6. *Alden* explained, rather, that states are only subject to federal claims to the extent they have expressly consented. 527 U. S. at 755 (III), 758 (IV) ("To the extent Maine has chosen to consent to certain classes of suits while maintaining its immunity from others, it has done no more than exercise a privilege of sovereignty concomitant to its constitutional immunity from suit. The State, we conclude, has not consented to suit.").

2. *Eleventh Amendment Immunity.*

The question, then, is whether the State maintains its sovereign immunity to the federal claims raised here under the Eleventh Amendment of the United States Constitution. See *Alden*, 527 U. S. at 712 (I) (framing the issue of whether the state of Maine was immune to claims under the Fair Labor Standards Act in its own courts in terms of Eleventh Amendment immunity); see also *Ga. Ports Auth. v. Lawyer*, 304 Ga. 667, 674-675 (3) (821 SE2d 22) (2018).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U. S. Const., amend. XI. As the Court explained in *Alden*, a state's sovereign immunity derives from the design of the Constitution itself, and is merely confirmed by the Eleventh Amendment. 527 U. S. at 728 (I) (C). Thus, the language of the Eleventh Amendment is construed broadly to include a state's immunity from suit by its own citizens. See Id. at 741-754 (II) (B) (1) to (4). And Eleventh Amendment immunity extends to departments and agencies of the state. See Id. at 756 (III) ("The immunity does not extend to suits prosecuted against a

municipal corporation or other governmental entity which is not an arm of the State."); *Ga. Ports Auth.*, 304 Ga. at 674 (3).

Regarding a state's immunity from federal claims in its own courts, the *Alden* Court wrote:

> Our sovereign immunity precedents establish that suits against nonconsenting States are not properly susceptible of litigation in courts, and, as a result, that the entire judicial power granted by the Constitution does not embrace authority to entertain such suits in the absence of the State's consent. We are aware of no constitutional precept that would admit of a congressional power to require state courts to entertain federal suits which are not within the judicial power of the United States and could not be heard in federal courts.

527 U. S. at 754 (II) (B) (4).

In construing this language, the Supreme Court of Georgia explained, "if a state instrumentality enjoys immunity from suit in the federal courts under the Eleventh Amendment, its sovereign immunity from suits in the courts of its own state is inviolable and cannot be abrogated by federal law[.]" *Ga. Ports Auth.*, 304 Ga. at 674 (3). In other words, if the State is immune from suits brought by private citizens under the ADAAA in federal court, the State is immune from such suits in our state courts

8

— unless it has consented to suit. See *Alden*, 527 U. S. at 754-755 (III); *Ga. Ports Auth.,* 304 Ga. at 682 (5) (As an "arm of the state," Ports Authority is entitled to Eleventh Amendment immunity in federal court and thus is entitled to sovereign immunity in state court "except to the extent that the State has consented to the suit.").

Importantly, in *Board of Trustees of University of Alabama v. Garrett*, the United States Supreme Court held that Congress had not abrogated the states' Eleventh Amendment immunity to claims for monetary damages brought by private citizens under Title I of the ADA.[6] 531 U. S. 356, 368, 374 (III) (121 SCt 955, 148 LE2d 866) (2001).

Applying the foregoing law to the case at hand, then, because OPD maintains Eleventh Amendment immunity to claims such as those brought by Hodge-Peets in federal court in accordance with *Garrett*, it maintains its sovereign immunity to those

---

[6] The Court in *Garrett* noted that "Congress may not, of course, base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I [of the United States Constitution]." 531 U. S. at 364 (I). Instead, its analysis was based on whether the ADA was enacted pursuant to Congress's power under Section 5 of the Fourteenth Amendment; the Court ultimately concluded that it was not. See Id. at 364-365 (I), 374 (III). The Court further noted that states were still subject to suit brought by the federal government for violations of Title I of the ADA. Id. at 374 (III), n. 9.

claims in our state courts — unless it has otherwise consented to the suit.[7] See *Alden*,

527 U. S. at 754 (II) (B) (4), 758 (IV); *Ga. Ports Auth.,* 304 Ga. at 674 (3), 682 (5).

3. *The FEPA.*

With this framework in mind, we now consider whether *Williamson* correctly held the State waived its sovereign immunity to claims under the ADA (and, thus, its amendments) by enacting the FEPA. Because we conclude there is no such waiver under the FEPA, we must overturn *Williamson*.

The Georgia Constitution provides that "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const., Art. I, Sec. II, Par. IX (e).

As we have explained,

---

[7] The parties do not dispute that OPD is an arm of the State. Notably, the Georgia Indigent Defense Act of 2003 provides that "[t]he Georgia Public Defender Council shall be an independent agency within the executive branch of state government." OCGA § 17-12-1 (b); see also *Ga. Public Defender Standards Council v. State*, 285 Ga. 169, 171 (675 SE2d 25) (2009) (noting that the "Act replaced the previous county-level piecemeal system with a statewide system which places on the Council the responsibility" of providing legal representation to indigent defendants); OCGA §§ 17-12-6 (b) (1) (designating the Council as the fiscal officer for the circuit public defender offices); 17-12-20 (providing a mechanism for the selection of circuit public defenders).

[a]lthough no special or magic words must be used by the legislature when enacting a statutory waiver of sovereign immunity, implied waivers are not favored, and it must be clear from the statute that immunity is waived and the extent of such waiver. Thus, where the plain language of a statute does not provide for a specific waiver of sovereign immunity and the extent of the waiver, the courts do not have the power to imply a waiver. And statutes providing for a waiver of sovereign immunity are in derogation of the common law and thus are to be strictly construed against a finding of waiver.

(Citations and punctuation omitted.) *Ga. Lottery Corp. v. Patel*, 353 Ga. App. 320, 322 (836 SE2d 634) (2019); see also *Lathrop v. Deal*, 301 Ga. 408, 444 (IV) (801 SE2d 867) (2017) ("If the consent of the State [to be sued] is to be found, it must be found in the constitution itself or the statutory law."); *RTT Assocs.*, 299 Ga. at 81 (1).

*Williamson* relied on the FEPA as the source of the State's waiver of its sovereign immunity to ADA claims. 258 Ga. App. at 116 (1). The FEPA provides an administrative scheme for the resolution of employment discrimination claims brought by employees of the State. OCGA §§ 45-19-22 (5), (6); 45-19-36 to 45-19-39. Its remedies include reinstatement and backpay. OCGA § 45-19-38 (c). Among the purposes of the FEPA is the prevention of employment discrimination against public workers based on "race, color, religion, national origin, sex, disability, or age." OCGA

11

§ 45-19-21 (a) (3). The Act also provides that it is to be broadly construed, and it does not intend "to exclude local or federal laws on the same subject matter" that are not inconsistent with its purpose. OCGA § 45-19-21 (b), (c). The FEPA provides that its intent is to further the policies of several federal employment discrimination laws, and specifically refers to Title VII of the Civil Rights Act, 42 USCA § 2000e et seq.; the Age Discrimination in Employment Act, 29 USCA § 621 et seq.; and the Rehabilitation Act, 29 USCA § 701 et seq.[8] OCGA § 45-19-21 (a) (3). Although the FEPA clearly applies to state disability discrimination claims, it makes no mention of the ADAAA or its predecessor. Id.

Nevertheless, Hodge-Peets argues that the broad language in the FEPA's purpose statement necessarily encompasses the ADAAA.[9] This

---

[8] Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 USCA § 2000e-2 (a). The Age Discrimination in Employment Act of 1967 prohibits employment discrimination against employees or candidates for employment who are at least 40 years old. 29 USCA § 623, 631 (a). The Rehabilitation Act of 1973 prohibits disability discrimination in federal employment, by federal contractors, and by agencies and programs receiving federal funds. 29 USCA §§ 791, 793, 794.

[9] Hodge-Peets points to another section of the FEPA as an example of its intent to waive the state's sovereign immunity to the ADAAA: OCGA § 45-19-27, which mandates that the Georgia Commission on Equal Opportunity (GCEO) maintain its status as a "deferral agency" of the federal Equal Employment Opportunity

argument, however, runs counter to our constitutional mandate that any waiver of the State's sovereign immunity must be specific as to both the waiver and its extent. Ga. Const., Art. I, Sec. II, Par. IX (e); see *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014) ("The plain language of [the Shore Protection Act] does not provide for a specific waiver of governmental immunity nor the extent of such a waiver, and therefore, no waiver can be implied or shown."); *Fulton County School Dist. v. Jenkins*, 347 Ga. App. 448, 450 (820 SE2d 75) (2018) ("[I]mplied waivers of sovereign immunity are not favored.") (citations

Commission (EEOC). However, this mandate merely reflects policy requiring the EEOC to "defer to the State or local agency if a State or local law prohibits the alleged unlawful employment discriminatory policy or practice, and there is a State or local entity to enforce that law." U. S. Equal Employment Opportunity Commission (EEOC) Open Government Plan, § 5.1 (version 4.0, July 2016), available at h t t p s : / / w w w . e e o c . g o v / us-equal-employment-opportunity-commission-eeoc-open-government-plan (last visited Feb. 6, 2024). In other words, the GCEO's status as a deferral agency does not authorize it to enforce federal law and, therefore, cannot be viewed as a waiver of the State's sovereign immunity to federal claims.

Similarly, Hodge-Peets points to the Georgia Equal Employment for Persons with Disabilities Code (EDC), OCGA § 34-6A-1 et seq., in an effort to establish the State's waiver of its immunity to ADAAA claims. However, this Act simply creates a state cause of action against government employers. OCGA §§ 34-6A-2 (2); 34-6A-6 (a). We fail to see how the EDC establishes the State's waiver of its immunity to *federal* disability discrimination claims. See *Fulton County School Dist. v. Jenkins*, 347 Ga. App. 448, 450 (820 SE2d 75) (2018) ("[I]mplied waivers of sovereign immunity are not favored.") (citations omitted).

omitted). Hodge-Peets points to no specific waiver of the State's immunity to these claims under the FEPA, nor have we found one.

Moreover, the FEPA's directive that it be broadly construed, and its intent not to "exclude" similar local and federal laws, does not translate to a universal inclusion of any such law. OCGA § 45-19-21 (b), (c); see also *Jenkins*, 347 Ga. App. at 450. We cannot reasonably conclude the General Assembly intended that result. As we construe this section, it merely states that the FEPA does not preclude or supercede any recourse available under similar local and federal laws; not that it incorporates those laws and thus acts as a waiver of the State's sovereign immunity to them.[10]

---

[10] As we have explained:

> [A] statute draws its meaning from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

14

OCGA § 45-19-21 (c). This construction is especially apt as to the ADAAA in light of the fact that the ADA did not exist when the FEPA was enacted.[11] Furthermore, because the ADAAA provides significant additional remedies,[12] we simply cannot read into the FEPA's purposes an intent to waive the State's sovereign immunity to ADAAA claims where there is none. See Ga. Const., Art. I, Sec. II, Par. IX (e)*; Center for a Sustainable Coast*, 294 Ga. at 603 (2); see also *Olvera v. Univ. System of Ga.'s Bd. of Regents*, 298 Ga. 425, 426 (782 SE2d 436) (2016) ("The sweep of sovereign immunity under the Georgia Constitution is broad."); *Lundy v. Hancock County*, 368 Ga. App. 772, 775 (3) (a) (890 SE2d 92) (2023) (no express waiver of sovereign immunity in applicable statutes); *Ga. Lottery Corp.*, 353 Ga. App. at 322 (courts may

---

(Citation and punctuation omitted.) *Milliron v. Antonakakis*, 369 Ga. App. 121, 124 (1) (891 SE2d 448) (2023).

[11] The FEPA was enacted in 1978, and thus predates the Americans with Disabilities Act of 1990. OCGA § 45-19-20; Ga. L. 1978, p. 859, § 25; 42 USCA § 12101, et seq.; Pub. L. 101-336, § 2, July 26, 1990, 104 Stat. 328.

[12] Among its remedies, a claimant under Title I of the ADAAA may seek compensatory and punitive damages in addition to backpay and frontpay. See 42 USCA §§ 12117 (a); 1981a (a) (1); 2000e-5 (g) (1). Whereas, under the FEPA, monetary damages are limited to actual damages. OCGA § 45-19-38 (d).

not imply a waiver of sovereign immunity where the plain language of a statute does not establish one).

Because we conclude the State did not waive its Eleventh Amendment immunity to ADAAA claims by enacting the FEPA, we overrule *Williamson* to the extent it found otherwise. See 258 Ga. App. at 115-116 (1).

Our ruling here does not offend the doctrine of stare decisis. "When we consider whether an earlier decision ought to be reexamined, we consider a number of factors, including the age of the precedent, the reliance interests involved, the workability of the prior decision, and *most importantly*, the soundness of its reasoning." (Citation omitted; emphasis supplied.) *Van Omen v. Lopresti*, 357 Ga. App. 9, 14 (2) (849 SE2d 758) (2020). Although *Williamson* was decided over twenty years ago, as we explained above, its reasoning is unsound, and for this reason it must be overturned.[13] See *Center for a Sustainable Coast*, 294 Ga. at 601 (2) ("[S]tare decisis

---

[13] We further note that *Williamson*'s reasoning has recently been called into question by a federal magistrate judge, and has, on occasion, been refuted in the federal district courts as to whether it dictates the State's waiver of its immunity to the ADA in federal court. See *Echols*, No. 1:20-cv-02794-TWT-AJB, 2021 WL 1521987, at *7 (III) (C); *see, e.g., Sanford v. Ga. Dept. of Public Safety*, No. 1:20-CV-4532-AT-JSA, 2021 WL 3073696, at *10 (II) (B) (3) (N. D. Ga. June 7, 2021) ("[T]he Eleventh Amendment prohibits federal courts from presuming that the state-court waiver recognized in *Williamson* applies to claims brought in federal court.

16

is an important doctrine, but it is not a straightjacket.") (citation and punctuation omitted).

Finally, we note that claimants similarly situated to Hodge-Peets are not without recourse as a result of our ruling. They may, for example, file state actions under the FEPA, OCGA § 45-19-20 et seq., and the Georgia Equal Employment for Persons with Disabilities Code, OCGA § 34-6A-1 et seq.

In light of the decision above, the trial court erred in denying OPD's motion to dismiss on sovereign immunity grounds, and we thus reverse its judgment.

*Judgment reversed. Brown, J., concurs. McFadden, P. J., concurs fully and specially.*

---

Thus, notwithstanding *Williamson*, Plaintiff's ADA claims . . . are barred by sovereign immunity.") (citation and punctuation omitted); *Westbrooks v. Ga. Dept. of Human Servs.*, No. 5:17-cv-00365-TES, 2020 WL 426493, at *2 (II) (M. D. Ga. Jan. 27, 2020) (Plaintiff's reliance on *Williamson* "is simply misplaced when it comes to her claim under Title I of the ADA brought in federal court, because the Eleventh Circuit Court of Appeals has recognized that a state does not waive immunity against a federal law by waiving immunity against a similar state law.") (citations and punctuation omitted).

MCFADDEN, Presiding Judge, concurring fully and specially.

I agree that under the decisions of the United States Supreme Court, waiver of sovereign immunity is not effected here by operation of the federal Americans with Disability Act and the Supremacy Clause of the United States Constitution. See *Alden v. Maine*, 527 U. S. 706, 732 (II) (A) (1) (119 SCt 2240, 114 LE2d 636) (1999). And I agree that under the decisions of our Supreme Court, there is no language in our Fair Employment Practices Act sufficient to constitute a clear and express waiver of sovereign immunity to federal disability claims. See *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014). So I agree that we erred in finding such a waiver in that Act and consequently that we must overrule *Williamson v. Dept. of Human Resources*, 258 Ga. App. 113 (572 SE2d 678) (2002). And I concur fully.

But I concur with trepidation. For twenty-two years, our disability law and the institutions that administer it have developed around the understanding that the Fair

Employment Practices Act waives sovereign immunity to federal disability claims. Upsetting all of that will have policy consequences that we are ill equipped to evaluate — and that it is not our role to evaluate.

I urge our General Assembly to evaluate them.