S09A0379. GEORGIA PUBLIC DEFENDER STANDARDS COUNCIL v. THE STATE et al.
(675 SE2d 25)

CARLEY, Justice.
Willie Palmer was convicted of two counts of malice murder and other offenses and was sentenced to death. This Court affirmed the judgments in *Palmer v. State*, 271 Ga. 234 (517 SE2d 502) (1999). On

petition for writ of habeas corpus, Palmer's convictions were vacated, and we affirmed, ordering a new trial. *Schofield v. Palmer*, 279 Ga. 848, 853 (3) (621 SE2d 726) (2005). After inquiry by habeas counsel and by the trial court in 2006, Michael Mears, who was then the director of the Georgia Public Defender Standards Council (Council), assured the trial court that counsel would be selected to represent Palmer on retrial and that all attorney's fees and expenses would be paid by the Council. Mr. Mears asked Michael C. Garrett to represent Palmer and to employ co-counsel, and informed Mr. Garrett that he would be paid out of the Council's conflict funds. Mr. Garrett agreed and employed J. Randolph Frails as co-counsel. Neither Mr. Garrett nor Mr. Frails (Attorneys) had previously been involved in Palmer's defense. During their representation, Attorneys submitted periodic invoices, and the Council eventually denied their requests for funding, stating through its chief legal officer that the Council is not the responsible entity for the compensation for legal services in this case because notice of intent to seek the death penalty was given prior to January 1, 2005. Palmer was again convicted and sentenced to death, and Attorneys submitted a final bill for $68,946.61.

On August 24, 2007, the trial court ordered the Council to pay Attorneys' fees and expenses pursuant to former OCGA § 17-12-127 (b), which read as follows:

> If for any reason the [O]ffice [of the Georgia Capital Defender] is unable to defend any indigent person accused of a capital felony for which the death penalty is being sought, the presiding judge of the superior court in which the case is pending shall appoint an attorney or attorneys to represent the defendant. Counsel appointed pursuant to this subsection shall be paid with state funds appropriated to the [C]ouncil for use by the [Capital Defender]. . . .

Ga. L. 2003, pp. 191, 217, § 1. This code section was part of Article 6 of Chapter 12 of Title 17. That Article created the Office of the Georgia Capital Defender and became "effective on January 1, 2005." Former OCGA § 17-12-128 (Ga. L. 2003, pp. 191, 217, § 1). We note that Article 6 was repealed in 2008 when the Office was succeeded by the capital defender division of the Council, but comparable provisions are now found in OCGA §§ 17-12-12 and 17-12-12.1. Ga. L. 2008, pp. 846, 865-867, 873, §§ 26, 27, 42. The trial court held that former OCGA § 17-12-127 (b) did not expressly exclude reimbursement by the Council where, as here, the defendant was indicted prior to January 1, 2005 and his attorneys were appointed after that date. The Council failed to comply with the

August 24, 2007 order, and the trial court entered an order on September 12, 2008 holding the Council in contempt and directing the Council to pay $68,946.61 into the registry of the court pending appeal. The Council appeals pursuant to OCGA § 5-6-34 (a) (2).

The Council contends that the August 24, 2007 order is void because the County is responsible for payment of Attorneys' fees and expenses incurred during Palmer's retrial. Under former OCGA § 17-12-44, which was enacted in 1979,

> a court was empowered to order a county to pay for legal services for an indigent defendant in a capital felony case. [Cits.] However, this Code section was only effective until January 1, 2005, following establishment of the Georgia Public Defender Standards Council. [Cits.]

*Fulton County v. State*, 282 Ga. 570, 572 (3) (651 SE2d 679) (2007). The Council was established by the Georgia Indigent Defense Act of 2003, OCGA § 17-12-1 et seq. (Act). That Act replaced the previous county-level piecemeal system with a statewide system which places on the Council the responsibility "for assuring that adequate and effective legal representation is provided, independently of political considerations or private interests, to indigent persons who are entitled to representation under [the Act]." OCGA § 17-12-1 (c). See also Alison Couch, *Criminal Procedure*, 20 Ga. St. U. L. Rev. 105 (2003).

The Council argues that former OCGA § 17-12-124 contemplated only contemporaneous or future indictments and future death penalty notices because it required the Capital Defender to submit "a proposed budget for representation of all indigent persons accused of a capital felony for which the death penalty is or is likely to be sought." Ga. L. 2003, pp. 191, 216, § 1. However, nothing in that provision required that the Council fund representation only for defendants who are indicted or sent a death penalty notice after a certain date. See *Walker Electrical Co. v. Walton*, 203 Ga. 246, 249 (1) (46 SE2d 184) (1948) (relying on the fact that the remedial statute there "does not contain any restriction or limitation as to cases pending on the effective date of the act"). Compare *Nickerson v. State*, 287 Ga. App. 617, 618-619 (1) (652 SE2d 208) (2007) (clause involving effective date expressly provided for pending cases); former OCGA §§ 17-12-108, 17-12-127.1 (Ga. L. 2003, pp. 191, 215, § 1; Ga. L. 2004, pp. 631, 636, § 17 (11))) (dealing only with continued representation by and payment to attorneys appointed pursuant to former Article 5, which temporarily created the office of the multicounty public defender). Furthermore, former OCGA § 17-12-127 (b) explicitly tied payment with Council funds to appointment of defense

counsel pursuant to that subsection. Thus, in this case, the fact that Attorneys were appointed after the effective date of former OCGA § 17-12-127 (b) indicates that their payment is governed by that statute rather than preexisting law. Compare *State v. Crittenden County*, 896 SW2d 881, 884 (I) (Ark. 1995).

Moreover, payment was expressly promised to come from the conflict funds which are the subject of former OCGA § 17-12-127 (b). Contrary to the Council's argument, it appears that the actions of Mr. Mears, as director, were not ultra vires. The Council was responsible for the management of the Office of the Georgia Capital Defender, which included administering and overseeing the expenditure of funds made available to the Office, and the Director was authorized to hire those staff employees and contract with outside consultants on behalf of the Council as may have been necessary to provide the services contemplated by the Act. Former OCGA §§ 17-12-5 (b) (3), 17-12-123 (4) (Ga. L. 2003, pp. 191, 197, 216, § 1). Even if Mr. Mears was not authorized to hire Attorneys and promise payment, former OCGA § 17-12-127 (b) placed ultimate responsibility on the trial court for the appointment of counsel due to a conflict of interest in a death penalty case. Once such an appointment was made, that statute required payment with state funds appropriated to the Council for use by the Capital Defender, regardless of whether any authorized person agreed to such payment.

Even assuming that Article 6 generally implied that death penalty cases which were pending prior to its effective date should continue to be funded by the individual county, there would still not be any reasonable implication that the former funding scheme should apply to death penalty cases in which a previous conviction or sentence is overturned. Such cases stand on an entirely different footing than those which have not yet resulted in any conviction. When a murder conviction or death sentence is overturned on legal grounds, it is nullified, the slate is wiped clean, and the State and the defense start anew. *Spraggins v. State*, 255 Ga. 195, 199 (1), 201 (3) (a) (336 SE2d 227) (1985); *Zant v. Redd*, 249 Ga. 211, 214 (290 SE2d 36) (1982). Indeed, whether there will even be a new trial depends upon whether the State chooses to retry the defendant. See *Thornton v. State*, 264 Ga. 563, 566 (2) (b) (449 SE2d 98) (1994); *Turner v. State*, 262 Ga. 359, 361 (3) (418 SE2d 52) (1992). The case becomes essentially indistinguishable from a newly pending case. If the State chooses retrial, then statutory provisions for the defense of an indigent must be applied anew, especially where, as here, new counsel is appointed. Otherwise, an indigent defense system which the General Assembly has determined to be deficient and which has been remedied by a new statutory scheme would nevertheless apply many years later in any case where original counsel was appointed

under the old system and, long after its repeal, a conviction is overturned by a habeas court.

Accordingly, both the statutory language of the Act and its underlying policy compel the conclusion that, in this case, the Council is responsible for payment of indigent defense costs pursuant to former OCGA § 17-12-127 (b). The indigent defense budgetary considerations raised by the Council do not constitute a proper policy matter for this Court. Moreover, the Council has not shown how those considerations would weigh in favor of its interpretation of former OCGA § 17-12-127 (b), because whoever must fund indigent defense in particular death penalty cases, whether it be the individual county or the State acting through the Council, will be required to consider the potential for retrials in budgeting for the appointment of counsel for indigent defendants.

Because former Article 6 took effect prior to the appointment of Attorneys, application of former OCGA § 17-12-127 (b) clearly does not violate the prohibition on the State's assumption of prior debts, as set forth in the Georgia Constitution of 1983, Art. VII, Sec. IV, Par. X.

The Council's remaining contentions are dependent upon its assertion that the August 24, 2007 order is void. Because we reject this assertion for the reasons outlined above, those remaining contentions are moot.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 9, 2009.

*Turner, Bachman & Garrett, Judson H. Turner, Gilbert, Harrell, Sumerford & Martin, Mark D. Johnson, Taylor H. Haley*, for appellant.

*Daniel J. Craig, District Attorney, Tucker, Everitt, Long, Brewton & Lanier, John B. Long*, for appellees.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Michael A. Caplan*, amici curiae.