S10A0374. PHAN v. THE STATE.
(699 SE2d 9)

MELTON, Justice.

On July 6, 2009, the trial court in this capital murder case denied both Khahn Dinh Phan's motion to dismiss the charges against him and his motion asserting a speedy trial violation. As the basis for these motions, Phan maintains that, pursuant to *Vermont v. Brillon*, ___ U. S. ___ (III) (C) (129 SC 1283, 173 LE2d 231) (2009), there has been a "systemic breakdown in the public defender system" caused by a lack of funding. In its order denying Phan's motions, the trial court requests direction from this Court, finding that the law that it must apply is unclear. With this request in mind, we remand this case with direction and vacate the trial court's order because (1) it fails to fully consider whether, with regard to the individualized facts of this specific case, the entire public defender system has broken down such that no publicly-funded and constitutionally-effective attorney from any source was available to represent Phan, see *Weis v. State*, 287 Ga. 46 (694 SE2d 350) (2010) and (2) it does not consider Phan's speedy trial claim within the required parameters of *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). See *Vermont v. Brillon*, supra.

In a nutshell, the record shows that, on December 29, 2004, Hung Thai and his two-year-old son were murdered "execution style" by gunshots to the back of the head. Hung's wife, Hoangoah Thai, was also shot in this manner, but she survived. After waking up from a seven-week coma, Hoangoah left for Vietnam, her family's native country. When interviewed by Georgia detectives over the

telephone, Hoangoah identified Phan as the person responsible for the shootings. Phan was arrested on March 16, 2005, and he was indicted by the Gwinnett County grand jury on September 7, 2005. On October 11, 2005, the State filed a notice of intent to seek the death penalty. Because Phan is indigent, the Georgia Public Defender Standards Council (GPDSC) retained attorneys Bruce Harvey and Christopher W. Adams to represent Phan. Although Adams has been paid through August 30, 2008, his subsequent bills have not been paid, and Harvey apparently has not been paid for his services. In 2006, defense counsel petitioned the GPDSC for funds to travel to Vietnam to investigate Phan's case for both facts and mitigation evidence. Phan is a native of Vietnam, and all of his family remains there. The GPDSC has not provided funds for this trip. Based on this lack of funding, Phan filed a motion to dismiss the charges against him, and he also claimed that his right to a speedy trial had been violated. Both motions are based on the notion that budgetary shortfalls and the lack of funding have caused a systemic breakdown of the public defender system.

To adequately address Phan's contentions, the trial court must first thoroughly assess whether there has been an actual breakdown in the entire public defender system prohibiting Phan from receiving counsel within the framework of the facts of this specific case. The trial court's assessment should include an analysis of alternative sources of funding and alternative representation if necessary under the circumstances of this particular case. As illustration, in our recent opinion in *Weis*, supra, similar claims were raised that there had been a systemic breakdown of the public defender system. We found, however, that there had been no such breakdown, as the trial court in that case found alternative publicly-funded representation for the defendant. We explained:

> While the constitutional speedy trial provisions primarily safeguard the defendant's rights, they also recognize the public's interest — including the interest of crime victims — in the resolution of criminal cases without unnecessary delay, and the prosecutor and the trial court have a responsibility to protect those interests. See *Barker v. Wingo*, supra, 407 U. S. at 519 (II) ("The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused"); id. at 527 (III) ("[S]ociety has a particular

> interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest"). See also *Zedner v. United States*, 547 U. S. 489 (III) (A) (126 SC 1976, 164 LE2d 749) (2006) (discussing the public interest in a speedy trial in the context of the federal Speedy Trial Act). In this regard, the trial court took appropriate action by appointing . . . public defenders to represent Weis [rather than his originally appointed attorneys].

Id. at 51 (1) (b). Therefore, the trial court in this case must determine whether any alternatives are available to ensure Phan's constitutionally-effective representation, including, but not limited to, the possibility of appointing alternative counsel. Id. See also *Georgia Public Defender Standards Council v. State*, 285 Ga. 169 (675 SE2d 25) (2009) (trial court properly ordered GPDSC to fund capital case). The trial court may also want to consider alternatives to travel to Vietnam, such as phone or internet interviews of witnesses. By doing so, the trial court may safeguard both the public interest as well as Phan's rights. *Weis*, supra; cf. *State v. Lattimore*, 287 Ga. 505 (696 SE2d 613) (2010).

If the trial court determines that *no* alternatives are available and that a systemic breakdown of the entire public defender system has actually occurred, this determination must then be factored into a constitutional speedy trial analysis for the review of such a claim. This requires a consideration of the four-part balancing test outlined in *Barker v. Wingo*, supra. Under this test, the Court must examine:

> (1) the length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right [to speedy trial]; and (4) the prejudice to the defendant. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test. *Washington v. State*, 243 Ga. 329, 330 (253 SE2d 719) (1979).

(Citation omitted.) *Layman v. State*, 284 Ga. 83, 84 (663 SE2d 169) (2008).

Within the *Barker* parameters, evidence of a systemic breakdown of the public defender system impacting a particular defendant should be considered under the reasons for delay. In *Vermont v. Brillon*, supra, an opinion focusing on this prong of the *Barker* test, the United States Supreme Court stated that "[t]he general rule attributing to the defendant delay caused by assigned counsel is not absolute. Delay resulting from a systemic 'breakdown in the public defender system,'

could be charged to the State." (Citations omitted.) *Vermont v. Brillon,* supra, ___ U. S. at ___ (III) (C). The systemic breakdown in the public defender system becomes part of the balance in determining whether a speedy trial violation has occurred. Of course, even in the context of a systemic breakdown, the remaining three *Barker* factors, the length of delay, assertion of the right, and prejudice to the defendant must also be considered.[1]

In the current case, the trial court's order does not fully address options, if any, for Phan's representation, and it does not employ *Barker's* balancing test. Both of these considerations are necessary to address Phan's claims, and, as a result, this case must be remanded for further proceedings consistent with this opinion.[2]

*Judgment vacated and case remanded with direction. All the Justices concur, except Hunstein, C. J., Benham and Thompson, JJ., who dissent.*

NAHMIAS, Justice, concurring.

I join the majority opinion in full, because I agree that (1) the trial court needs to fully address whether any feasible alternatives are available to ensure Phan's constitutionally effective representation, before concluding that the State's public defender system has broken down with respect to this particular case, and (2) the trial court must then weigh those and other relevant facts using the four-factor balancing test for speedy trial claims set forth in *Barker v. Wingo,* 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). Because this case will continue after remand, I write separately to note two important points.

First, with respect to the *Barker v. Wingo* analysis, it should be recognized that delayed assertion of the right to a speedy trial and lack of prejudice are the two factors that most often weigh heavily against defendants and which then support the overall conclusion that speedy trial rights have not been violated. See, e.g., *Marshall v. State,* 286 Ga. 446, 447 (689 SE2d 283) (2010); *Williams v. State,* 279 Ga. 106, 109-110 (610 SE2d 32) (2005). In this case, however, whatever the

---

[1] Although the dissent would affirm the trial court's finding of a systemic breakdown, it agrees that this systemic breakdown must be considered within the framework of *Barker v. Wingo.* Therefore, even if the dissent were correct with regard to a systemic breakdown, this case would still have to be remanded to the trial court. A trial court's decision to deny a motion for discharge based on an alleged speedy trial violation is reviewed under an abuse of discretion standard. *Burns v. State,* 265 Ga. 763 (462 SE2d 622) (1995). In the present matter, the trial court has not made any findings pursuant to *Barker v. Wingo,* and, as a result, there is currently no exercise of the trial court's discretion which this Court may properly review.

[2] To the extent that Phan raises concerns about the effectiveness of his representation, such claims are premature, and will not be addressed here. See *Weis v. State,* 287 Ga. 46, 51 (1) (b) (694 SE2d 350) (2010).

reasons for the delay in Phan's assertion of his speedy trial rights, those rights have now been asserted clearly for more than a year, since April 30, 2009. In addition, more than six years have already passed since Phan's arrest on March 16, 2005, and "[a]lthough the passage of time is not alone sufficient to sustain a speedy trial claim, greater pretrial delays simultaneously increase the degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice to his or her ability to present a defense." *Williams v. State*, 277 Ga. 598, 601 (592 SE2d 848) (2004). This interlocutory appeal has taken nearly a year to resolve, and the trial court on remand should decide to which party that delay should be attributed. But in evaluating the presumptive prejudice that is caused simply by the passage of time, courts look to the total elapsed time since the defendant's speedy trial rights attached, and that time is increasing with every passing day. In short, after this case is remanded, time will not be on the State's side, and the trial court and the parties should be keenly aware that the difficult and close questions this case raises will need to be addressed with alacrity.

Second, it should also be recognized that the United States Supreme Court has held that " 'the only possible remedy' " for a constitutional speedy trial violation is dismissal of the indictment with prejudice. *Strunk v. United States*, 412 U. S. 434, 440 (93 SC 2260, 37 LE2d 56) (1973) (quoting *Barker v. Wingo*, 407 U. S. at 522). See Akhil Reed Amar, Sixth Amendment First Principles, 84 Geo. L.J. 641, 645 (1996) (recognizing this strict rule and describing it as "the mother of all upside-down exclusionary rules," which "provides a windfall for the guilty while leaving the innocent defendant . . . uncompensated"). The trial court may take aggressive action to safeguard the public interest and *preclude* a speedy trial violation, see *Weis v. State*, 287 Ga. 46 (694 SE2d 350) (2010), and the district attorney has the authority to dismiss the death penalty notice, if that will make adequate funding available to the defense and allow for a speedy trial of this case. Once a constitutional speedy trial violation is found to exist, however, the remedy will be dismissal of the case.

THOMPSON, Justice, dissenting.

Because the evidence demonstrates a systemic breakdown of the public defender system, and the superior court has already made a finding in this regard, I see no reason to remand this case at this juncture. Accordingly, I respectfully dissent.

In denying Phan's motion to dismiss for a speedy trial violation, the superior court made these findings of fact on May 11, 2009:

1. Gwinnett County is unable to pay for any part of this death penalty case. The Georgia Public Defender Standards Council is the agency charged with funding the defense.

2. The Standards Council appointed Bruce Harvey and Chris Adams to represent Phan. Although Harvey has represented Phan for nearly four years,[3] he has never been paid. Adams was paid until August 30, 2008. The Standards Council approved Adams' bills, but it has been unable to pay for his services since that time.

3. In 2006 defense counsel asked for funds to travel to Vietnam to seek mitigation evidence. The Standards Council recognized that this request was completely valid and constitutionally required. Nevertheless, the Standards Council has not funded the trip.[4]

4. The Standards Council has no money to pay for Phan's defense through June 30, 2010, and the superior court has "no way of predicting when and if this will change." That is because the Standards Council "is unable to use any of [its] current funds to pay for this case or other similarly situated death penalty cases" and although the Standards Council sought additional funding in the legislature, it was not forthcoming.[5]

Based on the foregoing findings, the superior court denied Phan's motion to dismiss but concluded that on account of "a systemic failure" the Standards Council failed to provide "the basic resources to mount an effective defense as required by the Georgia and United States Constitutions." I agree with this conclusion and see no need for the superior court to revisit this issue. Instead, I would weigh Phan's speedy trial claim under *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), and enter the systemic failure of the public defender system into the calculus.

I am authorized to state that Chief Justice Hunstein and Justice Benham join this dissent.

DECIDED JUNE 28, 2010 —
RECONSIDERATION DENIED JULY 26, 2010.

*Bruce S. Harvey, Christopher W. Adams*, for appellant.
*Daniel J. Porter, District Attorney, Lisa A. Jones, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellee.

---

[3] This representation has now spanned nearly five years. Originally, Harvey was to be paid $125 per hour; that sum was reduced to $95 per hour.

[4] Mack Crawford, Executive Director of the Standards Council, testified at a hearing in 2008 that he was directed by the Governor to refuse authorization for international travel.

[5] The Standards Council "requested $1.18 million to be applied retroactively to pay for this and other cases. The appropriation was approved by the House of Representatives but was stricken from the budget in the Senate. The final budget bill contained no appropriation for this and similarly situated cases."

*Sarah L. Gerwig-Moore, Ashley Deadwyler, Dustin B. Weeks, Barclay R. Taylor*, amici curiae.