NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 6, 2025

S25A0336.  NELSON v. THE STATE.

COLVIN, Justice.

Appellant Quillian Donta Nelson, who has been charged with murder and related offenses in connection with the June 3, 2020 shooting death of Darwin Davis, appeals the denial of his motion to dismiss his indictment based on a violation of his constitutional right to a speedy trial. As explained below, we conclude that the trial court's ruling was based on several clearly erroneous findings of fact, as well as misapplications of the law. Accordingly, we vacate the trial court's order and remand for further consideration of Appellant's motion to dismiss.

1. The record on appeal shows the following. Appellant was arrested on June 5, 2020. On August 7, 2020, Appellant filed a pre-indictment demand for a speedy trial, invoking his right to a speedy

trial under the United States Constitution. More than 14 months after his arrest, on August 23, 2021, a Fulton County grand jury returned an indictment against Appellant, charging him with murder and related offenses.

Appellant's original defense attorney filed a motion for a continuance on March 15, 2022, due to an unspecified "conflict that w[ould] take precedence over" Appellant's case, but the record does not reflect whether the court ruled on the motion. On May 19, 2022, defense counsel filed a notice that she would be on leave for personal reasons for a total of 28 days between July 2022 and January 2023. And on October 13, 2022, defense counsel filed a motion to withdraw, which the court granted on January 3, 2023.

Substitute counsel for Appellant made an appearance in the case on February 8, 2023. And the record reflects that, between February 2023 and May 2024, Appellant's new defense attorney filed several notices regarding anticipated leaves of absence, which reflected that she would be on leave for more than 80 days between March 2023 and August 2024. Over that same period, the prosecutor

filed a notice that she intended to take leave for a total of nine days.

On July 10, 2023, Appellant filed a motion for permission to file an out-of-time statutory demand for speedy trial under OCGA § 17-7-171 (a). In the motion, Appellant also said that he was making a demand for a speedy trial "[p]ursuant to the Georgia Constitution."

The trial court held a hearing on the motion on August 31, 2023. During the hearing, the court noted that the case had appeared on the court's trial calendars for January and June 2023.[1] The court asked defense counsel what happened when the case appeared on the trial calendar, and defense counsel responded that she "believe[d]" she had "announced ready" for trial, but that the case "was just never reached." At a later hearing, however, defense counsel clarified that the defense had not announced ready for trial on January 3, 2023, when the case first appeared on the trial

---

[1] The trial court was permitted to take judicial notice of its own trial calendars, which are not contained in the record on appeal. See *Brown v. Citizens & S. Nat. Bank*, 245 Ga. 515, 518 (265 SE2d 791) (1980) (concluding that "the trial court was authorized to take judicial notice of the absence of the attorney's name on the trial calendar" because "a court may take judicial notice of its own records in the immediate case or proceedings before it").

calendar, because that was the same day the court had granted original counsel's motion to withdraw. But defense counsel stated that she had announced ready for trial when the case appeared on the June 2023 and April 2024 trial calendars, and that the case simply was not reached. The court noted that, if the case was not reached, that meant other cases on the calendar were older or that the court had determined, in its discretion, to prioritize other cases over Appellant's. On September 27, 2023, the trial court entered an order denying the motion to file an out-of-time statutory demand for a speedy trial.

On October 24, 2023, three years and four months after Appellant's arrest, Appellant moved to dismiss his indictment on constitutional speedy-trial grounds, invoking his right to a speedy trial under both the United States Constitution and the Georgia Constitution. The court scheduled a virtual hearing on the motion to dismiss for June 18, 2024, but Appellant requested that the court reschedule the hearing to another date so the motion could be heard in person.

On August 12, 2024, the court held a hearing on Appellant's motion to dismiss the indictment. Testifying at the hearing, Appellant said that he had received inadequate medical care throughout his four-year incarceration, that his requests for medical attention had generally been ignored, and that the Sheriff's Department had not taken him to his medical appointments or given him proper medication. In particular, he testified that he had developed an infection due to a pre-arrest gunshot wound, and that, about a month after his June 2020 arrest, the court had to order that he receive medical treatment for the infection.[2] Appellant further testified that, in January 2023, prisoners attacked him while he was sleeping and then stabbed him 36 times, after which he received treatment at a hospital for a collapsed lung. According to Appellant, a jail doctor later told him that he had Post-Traumatic Stress Disorder ("PTSD") as a result of the stabbing, but that he could not be treated for PTSD inside the jail. When asked about his ability to

_____

[2] The record shows that, on July 10, 2020, the court ordered the Fulton County Sheriff's Department to ensure that Appellant received adequate and proper medical care.

5

ask jail employees for help obtaining medical treatment, Appellant responded only that the jail employees were "working with the inmates" to commit "crimes" and were "sending [inmates] into dorms to rob other [inmates] . . . , to beat them up, [and] to stab them." And he complained about inadequate sleeping arrangements, showering facilities, and sanitation. Describing his incarceration generally, Appellant said that it had been mentally, physically, and emotionally painful.

On September 11, 2024, four years and three months after Appellant's arrest, the trial court denied Appellant's motion to dismiss the indictment on constitutional speedy-trial grounds. Appellant timely applied for a certificate of immediate review, which the trial court granted. And we granted Appellant's application for interlocutory appeal.[3]

2. Appellant argues that the trial court abused its discretion in denying his motion to dismiss his indictment on constitutional

---

[3] After we granted the application, Appellant timely filed a notice of appeal. The case was docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

speedy-trial grounds because the court's ruling was based on errors of both fact and law. We agree, as explained below.

"The Sixth Amendment of the United States Constitution guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." *Rafi v. State*, 289 Ga. 716, 716 (2) (715 SE2d 113) (2011) (citation and punctuation omitted). "This right is enshrined in the Georgia Constitution and is co-extensive with the federal guarantee made applicable to the states by virtue of the Fourteenth Amendment of the United States Constitution." Id. (citation and punctuation omitted). Constitutional speedy-trial claims are analyzed under the two-step *Barker-Doggett* framework. See id. at 716-717 (2) (citing *Barker v. Wingo*, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U.S. 647 (112 SCt 2686, 120 LE2d 520) (1992)). At the first step, "the trial court must determine whether the delay at issue was sufficiently long to be considered presumptively prejudicial." *Palmer v. State*, 318 Ga. 511, 516 (2) (899 SE2d 192) (2024). If so, the trial court proceeds to the second step, which "requires the application of a

7

[four-factor,] context-sensitive balancing test to determine whether the defendant has been deprived of his right to a speedy trial." Id. Specifically, the court must consider the following factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant from the delay." Id.

Because "[a]pplication of the *Barker-Doggett* balancing test to particular cases is committed to the sound discretion of the trial courts," this Court "accept[s] the trial court's factual findings unless they are clearly erroneous, and we review the trial court's evaluation of each factor and its balancing of the factors — its ultimate judgment — only for abuse of discretion." *Palmer*, 318 Ga. at 516 (2) (citation and punctuation omitted). "[I]f the trial court's factual findings are clearly erroneous or the trial court significantly misapplies the law," we will affirm the trial court's exercise of discretion "only if [we] can conclude that, had the trial court used the correct factual and legal analysis, it would have had no discretion to reach a different judgment." *Redding v. State*, 318 Ga.

225, 227 (1) (897 SE2d 801) (2024) (citation and punctuation omitted). "If the trial court would still have discretion to reach a different judgment, we remand for the trial court to reweigh the factors and exercise its discretion using the correct factual and legal analysis." Id.

In this case, the trial court began its analysis by finding that the "[l]ength of [d]elay" was "presumptively prejudicial" because "the case ha[d] been pending more than one year," and that "an analysis into the remaining factors in the four-factor analysis" was therefore "require[d]." Turning next to the reason-for-the-delay factor, the court found that the factor was neutral and did not weigh against either party because the trial had been delayed due to the COVID-19 pandemic and "[d]efense [counsel's] requested continuances based on approved leave for trial calendars." The court weighed the assertion-of-the-right factor against Appellant, finding that he "failed to [timely] assert his statutory right to a speedy trial," and that he also failed to "timely" assert his "constitutional right to a speedy trial" because he first asserted that right "three years after

9

arrest and two years after [i]ndictment." The trial court also weighed the prejudice factor against Appellant, concluding that he had not provided any evidence that the delay impaired his ability to defend himself, and that he had "failed to show actual anxiety and concern with specific evidence of how the delay impaired his ability to defend himself as required under *Johnson v. State*, 268 Ga. 416 (1997)." Finally, considering the factors together, the court concluded that, "[a]lthough the length of delay [was] presumptively prejudicial, [Appellant] ha[d] failed to meet the other three factors" because one of the three factors did not weigh against either party and the other two factors weighed against Appellant.

(a) It is undisputed on appeal, and we agree, that the trial court correctly determined that a presumption of prejudice arose in this case. Appellant was detained for more than four years without his case being brought to trial, and "a delay greater than one year is typically presumed to be prejudicial." *McCullum v. State*, 318 Ga. 485, 495 (4) (899 SE2d 171) (2024) (citation and punctuation omitted). See also *Palmer*, 318 Ga. at 516 (2) (a) (i) ("[T]he length of

10

the delay ordinarily is measured from the earlier of the date of the defendant's arrest or indictment (or other formal accusation) to the date that his trial started."). As explained below, however, the trial court made significant factual and legal errors in assessing the four *Barker-Doggett* factors.

(b) "The length of the pretrial delay *in absolute terms* plays a role in the threshold determination of presumptive prejudice." *Redding*, 318 Ga. at 227 (2) (a) (citation and punctuation omitted; emphasis in original). "However, it also wears another hat as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis." Id. (citation and punctuation omitted). "While similar, the presumptive prejudice threshold and the length-of-delay factor are separate inquiries." Id. "In considering the length of the delay, a court must consider whether delay before trial was uncommonly long" and must "assign[ ] weight" to this factor. Id. at 227-228 (2) (a), 232 (2) (e) (citation and punctuation omitted).

Here, however, the trial court considered the length of the

11

delay only with regard to the presumption of prejudice and gave *no* consideration to the length-of-the-delay factor: the court did not calculate the length of the delay, address whether the delay was uncommonly long, or assign weight to the length-of-the-delay factor. See *Redding v. State*, 313 Ga. 730, 732, 735-736 (2) (873 SE2d 158) (2022) (vacating and remanding where the trial court "did not explicitly calculate the length of the delay," did not "consider[ ] [the length-of-the-delay factor] separately," and "failed to weigh each *Barker* factor"). See also *Goins v. State*, 306 Ga. 55, 57-58 (2) (b) (829 SE2d 89) (2019) ("[W]e have explained that it is imperative that the trial court enter findings of fact and conclusions of law consistent with *Barker*" because, "[a]bsent such findings, there is no exercise of discretion for this Court to review." (citations and punctuation omitted)). Instead, the trial court conflated the presumption-of-prejudice inquiry at step one of the *Barker-Doggett* framework with the length-of-the-delay factor at step two of the framework, stating with respect to the "[l]ength of [d]elay" factor only that the delay was "presumptively prejudicial." In equating these distinct inquiries and

12

failing to give any consideration to the length-of-the-delay factor, the trial court "significantly misapplie[d] the law." *Redding*, 318 Ga. at 227 (1), (2) (a) (citation and punctuation omitted).

(c) In considering the reason-for-the-delay factor, "the trial court must consider which party was responsible for the delay, whether the delay was intentional, and, if it was intentional, what the motive was for seeking or causing the delay." *Redding*, 318 Ga. at 228 (2) (b) (citation and punctuation omitted). "As to the amount of weight assigned to this factor, different weights should be assigned to different reasons." Id. (citation and punctuation omitted). For example, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," whereas "an unintentional delay, such as that caused by the prosecuting attorney's mere negligence or the trial court's overcrowded docket, should be weighted less heavily [against the government]." Id. at 228-229 (2) (b) (citation and punctuation omitted). And, "[o]f course, [any] delay caused by the defense weighs against the defendant." Id. at 229 (2) (b) (citation and punctuation

13

omitted).

The trial court here attributed the delay to two factors: the COVID-19 pandemic and defense counsel's requests for continuances to take leaves of absence. On appeal, Appellant does not challenge the weight that the trial court afforded to the portion of the delay attributable to the COVID-19 pandemic and the related judicial-emergency order.[4] But Appellant correctly argues that the

[4] During the August 12, 2024 hearing, defense counsel conceded that the delay caused by the COVID-19 pandemic and the associated judicial-emergency order was "a nullity in terms of [the court's] assessment" that "can't be weighed" against either party. Because Appellant conceded that point below and does not raise the issue on appeal, we need not decide here whether the Court of Appeals cases addressing COVID-19-related delays in the speedy-trial context are correct. See *Smith v. State*, 373 Ga. App. 33, 41 (II) (b) (i) (907 SE2d 327) (2024) ("Neither party is responsible for the delays caused by the COVID-19 pandemic," and "delay during the judicial emergency declared during the COVID-19 pandemic should be considered a neutral factor under the *Barker-Doggett* framework, not weighted against either party."); *Foreman v. State*, 371 Ga. App. 838, 845 (1) (b) (ii) (903 SE2d 303) (2024) (holding that "a delay caused by the COVID-related judicial emergency may not be weighted against either party"); *Shriver v. State*, 371 Ga. App. 580, 584 (2) (901 SE2d 721) (2024) ("[T]he State cannot be faulted for the periods in 2020 and 2021 during which no jury trials were held, and the delays caused by overcrowded dockets following the resumption of jury trials are not entitled to significant weight."); *State v. Adams*, 364 Ga. App. 864, 868 (2) (b) (i) (876 SE2d 719) (2022) ("[T]he delay of just under 16 months attributable to the [COVID-19-related] statewide judicial emergency is not weighed against either party."); *Labbee v. State*, 362 Ga. App. 558, 566-567 (2) (b) (iv) (869 SE2d 520) (2022) (holding that "neither party is responsible for the delays caused by the COVID-19 pandemic"

14

trial court clearly erred to the extent that it found that the trial was delayed due to defense counsel's requests for continuances of the trial to take leaves of absence. The record shows that, although defense counsel filed several notices regarding leaves of absence, those notices did not include requests to delay *the trial*. See *Redding*, 318 Ga. at 229-230 (2) (b), (c) (holding that the record did not support a finding that the defendant had contributed to the delay because, although the defendant requested additional time to prepare for his probation revocation and defense counsel asked to reschedule a calendar call due to a vacation, the defendant "never requested a delay *of trial*" (emphasis in original)). The record contains only one request for a continuance filed by defense counsel, which was sought for an unspecified reason. And there is no indication in the record that the request was granted, such that it could have contributed to the delay of trial.

---

because "the pandemic is a catastrophic and unique event beyond either party's control," and that, "even if the State can be said to have caused the pandemic-related delay by suspending jury trials, the delay was justified and appropriate" and therefore "should not be weighed against the State" (citations and punctuation omitted)).

Further, although "defense [counsel's] requests for leaves of absences may be considered in determining the reason for the delay," *Cash v. State*, 307 Ga. 510, 517 (2) (a) (ii) (837 SE2d 280) (2019), it is unclear here whether the trial court found that defense counsel's leaves of absence themselves (as opposed to the purported continuances granted for leaves of absence) contributed to the delay in bringing the case to trial. And "[i]t is not the role of an appellate court to weigh the *Barker* factors in the first instance." *Redding*, 313 Ga. at 735 (2).[5]

(d) In assessing the assertion-of-the-right factor, the trial court must consider "whether the defendant asserted the right to a speedy trial in due course." *Redding*, 318 Ga. at 229 (2) (c) (citation and punctuation omitted). "This factor focuses on the timing, form, and vigor of the accused's demands to be tried immediately." Id. (citation and punctuation omitted). "Although an accused need not demand a trial at the first available opportunity, his failure to assert his right

---

[5] On remand, the trial court should also consider whether Appellant's substitution of counsel contributed to the delay. We express no opinion on that issue.

16

with reasonable promptness will ordinarily weigh heavily against him." Id. (citation and punctuation omitted).

On appeal, Appellant contends that the trial court abused its discretion in weighing the assertion-of-the-right factor against him based on a clearly erroneous finding that he first asserted his constitutional right to a speedy trial three years after his arrest and two years after his indictment. We agree that this factual finding was clearly erroneous, as the record shows that Appellant timely asserted his constitutional right to a speedy trial two months after he was arrested, before he was indicted. See *State v. Pickett*, 288 Ga. 674, 676 (2) (c) (3) (706 SE2d 561) (2011) ("[A] defendant may assert his constitutional right to a speedy trial at any time after he is arrested; he need not wait until indictment."). The trial court was not required to afford significant weight to Appellant's pre-indictment demand for a speedy trial. See *Barker*, 407 U.S. at 529 (III) (noting that a court need not "attach[ ] significant weight to a purely pro forma" demand for speedy trial). But the clearly erroneous finding that Appellant did not timely file a constitutional

17

demand for a speedy trial played a central role in the trial court's decision to weigh this factor against Appellant, and the court may have weighed the factor differently absent this error.

(e) There are "three types of prejudice that are relevant" in assessing whether a defendant has suffered prejudice from a delay in bringing his case to trial: (1) "oppressive pretrial incarceration," (2) "anxiety and concern" of the defendant and (3) "impairment of the accused's ability to defend against the charges due to dimming memories and loss of exculpatory evidence." *Palmer*, 318 Ga. at 523 (2) (b) (iv). For the first two types of prejudice to weigh in favor of a defendant, the defendant must introduce evidence of "oppressive pretrial incarceration or anxiety and concern" that goes "beyond that which necessarily attends confinement in a penal institution." *Harris v. State*, 284 Ga. 455, 456 (667 SE2d 361) (2008) (citation and punctuation omitted). See also *Jackson v. State*, 272 Ga. 782, 786-787 (534 SE2d 796) (2000) (noting that establishing oppressive pretrial incarceration requires "proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend

18

imprisonment" (citation and punctuation omitted)).

On appeal, Appellant "concedes that the passage of time has not resulted in any demonstrative impairment to his ability to prepare and present his defense." But he argues that the trial court abused its discretion by failing to consider his testimony from the August 12, 2024 hearing, which he contends provided evidence that he suffered prejudice from delay based on oppressive pretrial incarceration and anxiety and concern. We agree that the trial court erred in failing to consider that evidence.

As an initial matter, it appears that the trial court believed that this Court's statement in *Johnson* that "[the defendant] must show actual anxiety and concern and specific evidence of how the delay impaired his ability to defend himself," *Johnson*, 268 Ga. at 418 (2), rendered evidence of oppressive jail conditions and anxiety and concern irrelevant. But the trial court misread *Johnson*, misquoting the case as having said that a defendant must "show actual anxiety and concern *with* specific evidence of how the delay impaired his ability to defend himself," and taking this one

19

statement out of context. (Emphasis supplied.)

In fact, *Johnson* expressly identified "oppressive pretrial incarceration" and "anxiety and concern of the defendant" as two of the three factors that a court is "require[d]" to consider in assessing prejudice from a delay in bringing a case to trial. *Johnson*, 268 Ga. at 417 (2). And in analyzing the prejudice from delay, *Johnson* considered the evidence — or lack thereof — relevant to each of the three prejudice factors. *Johnson* began its analysis by concluding that the length of the defendant's detention, standing alone, did not show that the defendant suffered prejudice from oppressive pretrial incarceration. See id. at 418 (2) (citing *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994), for the proposition that "a 21-month delay is insufficient to raise an inference of actual prejudice"); *Boseman*, 263 Ga. at 733 (1) (d) (noting that, "[w]ith regard to . . . oppressive pretrial incarceration, . . . the 27 month delay, standing alone, was oppressive," but "that pretrial detention alone [does not] permit[ ] an automatic inference of enough prejudice to balance that factor in a defendant's favor without proof of sub-standard

conditions or other oppressive factors beyond those that necessarily attend imprisonment." (citations and punctuation omitted)), overruled on other grounds by *Sosniak v. State*, 292 Ga. 35 (734 SE2d 362) (2012). *Johnson* noted that, as a result, the prejudice factor could not weigh in the defendant's favor absent evidence that the defendant suffered "actual anxiety and concern" or an "impaired . . . ability to defend himself." *Johnson*, 268 Ga. at 418 (2). And as to those factors, *Johnson* concluded that "[t]here [was] no evidence in the record of [the defendant's] anxiety or concern" and "no evidence" to support the defendant's "speculat[ion]" that the delay impaired his defense. Id. In other words, *Johnson* determined that neither oppressive pretrial incarceration nor anxiety and concern prejudiced the defendant because there was insufficient *evidence* regarding those factors, not because those factors did not matter. The trial court therefore erred here in concluding that *Johnson* authorized it to disregard entirely any evidence of oppressive pretrial incarceration or anxiety and concern.

Here, Appellant testified about the nature of his pretrial

21

incarceration, as well as the anxiety and concern he experienced while incarcerated. If credited, some of that testimony — particularly his testimony about being unable to get treatment for a serious medical condition without a court order, about suffering a brutal stabbing while incarcerated, and about jail employees participating in violent crimes against detainees — could have supported a finding that he suffered "oppressive pretrial incarceration or anxiety and concern beyond that which necessarily attends confinement in a penal institution." *Harris*, 284 Ga. at 456 (citation and punctuation omitted).

The trial court was not required to credit Appellant's testimony. See *Davis v. State*, 315 Ga. 252, 259 (2) (d) (iv) (882 SE2d 210) (2022) (trial court did not clearly err in discrediting the defendant's testimony about jail conditions and his anxiety due to incarceration where there was no "contemporaneous documentation of [the defendant's] complaints about jail conditions" and the court found that the defendant "was obviously exaggerating in his testimony" (punctuation omitted)). But the court's order indicates

that it disregarded Appellant's testimony based on a misreading of *Johnson*, not based on a negative credibility finding. And the trial court may have weighed this factor differently if it had properly considered all of the evidence of record, including Appellant's testimony.

(f) In sum, the trial court failed to make any findings with respect to the length-of-the-delay factor or to assign that factor weight; the court made "factual findings [that were] clearly erroneous" with respect to the reason-for-the-delay and the assertion-of-the-right factors; and the court "significantly misapplie[d] the law" regarding the prejudice factor. *Redding*, 318 Ga. at 227 (1) (citation and punctuation omitted). Because the trial court would not have been compelled to deny Appellant's motion to dismiss if it had used the correct factual and legal analysis, we vacate the trial court's order denying Appellant's motion to dismiss the indictment on constitutional speedy-trial grounds and remand for further consideration of the motion consistent with this opinion. See id. at 232-333 (2) (e) (vacating and remanding because, "[w]hile

23

the trial court may be authorized to deny [the defendant's] speedy-trial motion after assigning weight and balancing anew the four factors in accordance with the applicable law and directions outlined in this opinion, we [could not] say the trial court [was] necessarily compelled to do so" (footnote omitted)).

*Judgment vacated and case remanded. Peterson, CJ, Warren, PJ, and Bethel, Ellington, McMillian, and Pinson, JJ, concur. LaGrua, J, disqualified.*

PETERSON, Chief Justice, concurring.

I join the Court's opinion in full. I write separately to point out that our speedy-trial caselaw appears to have gone astray. Specifically, over time we appear to have adopted too high a standard for the prejudice a defendant who is incarcerated pre-trial must demonstrate in order to secure dismissal of an indictment against him on constitutional speedy-trial grounds. In an appropriate case, we should reconsider that precedent, the logic of which would suggest that there is no speedy-trial problem with leaving an innocent-until-proven-guilty defendant in jail without trial for decades so long as they're not mistreated there.

The United States Supreme Court has identified three interests the constitutional right to a speedy trial "was designed to protect": "to prevent oppressive pretrial incarceration[,]" "to minimize anxiety and concern of the accused[,]" and "to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (92 SCt 2182, 33 LE2d 101) (1972); see also *Doggett v. United States*, 505 U.S. 647, 654 (112 SCt 2686, 120 LE2d 520)

(1992). The Supreme Court has said that "[o]f these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654 (citation and punctuation omitted). But it also has made clear that "prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings." *Moore v. Arizona*, 414 U.S. 25, 26-27 (94 SCt 188, 38 LE2d 183) (1973). Indeed, there is some evidence that as a matter of original meaning the speedy-trial right primarily protects the accused from prolonged detention without an adjudication of guilt. See *United States v. Olsen*, 21 F4th 1036, 1059-1064 (9th Cir. 2022) (Bumatay, J., concurring in the denial of rehearing en banc).

Moreover, the Supreme Court has "expressly rejected the notion that an affirmative demonstration of prejudice [is] necessary to prove a denial of the constitutional right to a speedy trial," saying that none of the four factors that comprise the *Barker-Doggett* framework is "'either a necessary or sufficient condition to the

26

finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" *Moore*, 414 U.S. at 26 (quoting *Barker*, 407 U.S. at 533). Because many speedy-trial claims do not involve pre-trial incarceration, see, e.g., *Doggett*, 505 U.S. at 654-658 (considering prejudice from eight-and-a-half-year lag between indictment and arrest), one critical consideration is whether the accused is in fact incarcerated prior to trial. See *United States v. Garcia*, 59 F4th 1059, 1069 (10th Cir. 2023) (noting that "because the seriousness of a post-accusation delay worsens when the wait is accompanied by pretrial incarceration, oppressive pretrial incarceration is the second most important" of the possible forms of prejudice the speedy-trial right guards against (citation and punctuation omitted)).

It seems to me that the question of whether that pre-trial incarceration is sufficiently "oppressive" to be prejudicial turns not only on the conditions of that incarceration, but also separately on how long a defendant is being held without trial. This is consistent

with federal caselaw saying that long pre-trial incarceration alone can be prejudicial. See *Garcia*, 59 F4th at 1069 ("Some cases of extreme delay excuse the defendant's obligation under this factor to show specific evidence of prejudice, but generally the court requires at least a six-year delay before allowing the delay itself to constitute prejudice."); *United States v. Black*, 918 F3d 243, 265-266 (2d Cir. 2019) (noting that "sheer length of time at issue here" — five years and eight months of pre-trial detention — "makes this pre-trial detention egregiously oppressive" before finding speedy-trial violation despite only "modest" effect on the defendants' defense (citation and punctuation omitted)); *United States v. Dunn*, 345 F3d 1285, 1297 (11th Cir. 2003) (suggesting that defendant could establish prejudice by showing that his defense was harmed or that "the conditions under which he was held *or* the length of his confinement rendered the delay a constitutional violation" (emphasis supplied)); *Hakeem v. Beyer*, 990 F2d 750, 762 (3d Cir. 1993) (noting that "time alone may, in some cases, rise of the level of oppressive pretrial incarceration" before finding that defendant

28

could not prevail based on oppressive incarceration given that that, upon conviction, defendant received credit for all of the pre-trial time he had served and he had "not pointed to any evidence of additional, specific prejudice flowing from the delay" (citation and punctuation omitted)).[6] Additionally, I note that federal courts, including the Supreme Court, have concluded that substantial delays in bringing a case to trial — *even without pre-trial incarceration* — are presumptively prejudicial to the defense. See, e.g., *Doggett*, 505 U.S. at 657-658 (eight-and-a-half-year delay from indictment to arrest, with six years attributable to the government,

---

[6] A number of post-conviction federal cases considering speedy trial claims have found lengthy pre-trial incarceration not prejudicial where the defendant received credit for time served on his sentence. See, e.g., *United States v. Frye*, 489 F3d 201, 213 (5th Cir. 2007) ("A lengthy pretrial incarceration does not inherently offend a defendant's liberty interests. See, e.g., *Gray v. King*, 724 F2d 1199, 1204 (5th Cir. 1984) (finding no oppressive pretrial incarceration where defendant received credit for pretrial incarceration to be applied [to] his sentence). Frye was ultimately sentenced to life in prison without the possibility of release. Therefore, Frye, like the defendant in *Gray*, did not suffer any increase in his total time spent in prison as the result of pretrial delays."). But those post-conviction cases can have no relevance to *pre-trial* speedy-trial claims like the one here, in which the Constitution's presumption of innocence prevents a reviewing court from assuming that there will be an eventual sentence on which to afford credit for time served.

29

required grant of motion even absent proof of effect on defense); *United States v. Mendoza*, 530 F3d 758, 764-765 (9th Cir. 2008) (government did not rebut strong presumption of prejudice from eight-and-a-half-year delay between indictment and arrest during which the government did not exercise due diligence in finding the defendant). If a substantial delay in bringing the case to trial where the defendant is not incarcerated can constitute prejudice, then surely some substantial period of incarceration can itself constitute prejudice to support dismissal — after consideration of all of the *Barker-Doggett* factors — on speedy-trial grounds.

Despite all of this, we have said that in order to show "oppressive" pre-trial incarceration, a defendant must show something *more* than a lengthy pre-trial incarceration. See, e.g., *Redding v. State*, 318 Ga. 225, 231-232 (2) (d) (897 SE2d 801) (2024) (concluding in case involving presumptively prejudicial 25-month delay that trial court did not err in weighing the prejudice factor heavily against defendant, given that defendant failed to show prejudice from loss of witness and presented "no specific showing" of

30

oppressive incarceration or anxiety and concern of the accused); *Davis v. State*, 315 Ga. 252, 259 (2) (d) (iv) (882 SE2d 210) (2022) (concluding in case involving presumptively prejudicial 30-month delay that trial court did not abuse its discretion in determining that defendant failed to establish actual prejudice given the trial court's assessment that defendant was "obviously exaggerat[ing]" in his testimony about conditions at the Fulton County jail and had not provided any "contemporaneous documentation" of his complaints); *State v. Johnson*, 291 Ga. 863, 867 (2) (d) (734 SE2d 12) (2012) (concluding in case involving presumptively prejudicial five-year delay between arrest and dismissal of indictment that, although "prejudice properly may be presumed in this case from the length of the pretrial delay[,]" trial court findings that defendant was subjected to oppressive pretrial incarceration and experienced unusual anxiety as a result of his prosecution and incarceration were erroneous given that he had made no showing that he had been subjected to "substandard" jail conditions and or an "unusual showing" about anxiety and concern); *Weis v. State*, 287 Ga. 46, 54

(1) (d) (694 SE2d 350) (2010) (concluding in case involving presumptively prejudicial three-and-a-half year period from the date of defendant's arrest to the case being put on the trial calendar that "there has been no oppressive pre-trial incarceration, as Weis has made no showing that he has been subjected to substandard conditions in the county jail where he has been housed."); *Ruffin v. State*, 284 Ga. 52, 57-58 (2) (b) (i), 65 (2) (b) (iv) (663 SE2d 189) (2008) (trial court properly weighed prejudice factor against defendant who did not show either impairment of his defense or "oppressive pretrial incarceration of anxiety and concern beyond that which necessarily attends confinement in a penal institution[,]" despite fact that pre-trial delay of two years, two months, and twenty-three days, with defendant in jail for all but about three months of that time, was "unusual even in comparison with other non-capital murder cases"); *Jackson v. State*, 272 Ga. 782, 785 (534 SE2d 796) (2000) (defendant who experienced "unquestionably burdensome" pre-trial incarceration of nearly two years nonetheless "failed to swing the balance of prejudice in his favor" given that he "failed to offer the

specific evidence required to support his general claims of anxiety, poor conditions in the Fulton County jail, and that his defense may be impaired by the delay"); but see *Williams v. State*, 277 Ga. 598, 600-601 (1) (d) (592 SE2d 848) (2004) (trial court correctly found that defendant "had failed to show any particular form of prejudice other than the mere fact of his" more than five-year pre-trial incarceration but erred to the extent that it found that this failure weighed *heavily* against the defendant, "in light of the extraordinarily long delay" in bringing case to trial).

In some of these decisions, we did not cite any authority for the notion that a defendant must show something more than typical conditions of incarceration in order for their pre-trial incarceration to be considered "oppressive" for purposes of showing prejudice from pre-trial delay. See *Weis*, 287 Ga. at 54 (1) (d); *Ruffin*, 284 Ga. at 65 (2) (b) (iv). In other cases, we have allowed holdings on particular facts to morph into a bright-line rule.

In *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994), overruled on other grounds by *Sosniak v. State*, 292 Ga. 35, 40 (2)

33

(734 SE2d 362) (2012), we said we would assume that a 27-month delay was "oppressive," while noting that "other courts have declined to hold that pretrial detention alone 'permits an automatic inference of enough prejudice to balance that factor in [a defendant's] favor without proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment.'" *Boseman*, 263 Ga. at 733 (1) (d). For this proposition, we cited only a Third Circuit case, *Hakeem v. Beyer*. But *Hakeem*, although it cited Third Circuit caselaw for the proposition that "[t]he seriousness of a deprivation of pretrial incarceration will vary with the conditions of the defendant's confinement[,]" held merely that "pretrial detention, *coupled with a fourteen and one-half month delay*" does not permit such an "automatic inference of *enough* prejudice to balance that factor in a petitioner's favor without proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." 990 F2d at 761 (punctuation and citation omitted; emphasis supplied). *Hakeem* thus did not hold that no length of pre-trial incarceration would be

34

sufficient to establish prejudice on its own, only that it was not sufficient in that case.

And yet, in *Johnson v. State*, 268 Ga. 416 (490 SE2d 91) (1997), we characterized *Boseman* as having *held* that a "27-month delay does not raise [an] inference of prejudice" and relied on that to conclude that "a 21-month delay is insufficient to raise an inference of actual prejudice." *Johnson*, 268 Ga. at 418 (2). We relied on *Boseman* for the proposition that "[t]hus, Johnson must show actual anxiety and concern and specific evidence of how the delay impaired his ability to defend himself." *Johnson*, 268 Ga. at 418 (2). We later cited *Johnson* for that proposition in a case in which we assumed that a 25-month delay constituted "oppressive pretrial incarceration" but nonetheless concluded that the prejudice factor favored the State given the defendant's failure "to show that he suffered undue anxiety or concern attendant to that incarceration" or offer specific evidence of impairment of his defense. *Mullinax v. State*, 273 Ga. 756, 759 (2) (545 SE2d 891) (2001).

And in *Jackson*, we cited *Boseman* for the proposition that a

35

27-month delay (which *we assumed was oppressive* in *Boseman*) "does not automatically establish prejudice in the defendant's favor for purposes of the *Barker* analysis absent 'proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment[,]'" and thus concluded that a defendant could not show prejudice from a nearly two-year period of pre-trial incarceration given that he had "failed to offer the specific evidence required to support his general claims of anxiety, poor conditions at the Fulton County jail, and that his defense may be impaired by the delay[.]" *Jackson*, 272 Ga. at 785. We since have cited *Jackson* as standing for the general rule that "to show oppressiveness, defendant must offer specific 'proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment[.]'" *Davis*, 315 Ga. at 259 (2) (d) (iv). In short, we seem to have turned holdings about particular facts into a bright-line rule that even lengthy pre-trial incarceration can never be prejudicial without more. Such a rule is obviously wrong; it suggests that the right to a speedy trial does not prevent leaving an innocent-until-

36

proven-guilty defendant in jail without trial for decades so long as they're not mistreated there. And none of our cases have ever cited any authority that actually explains why our bright-line rule could be correct.[7]

But Nelson does not ask us to reconsider our caselaw, in large part because — as the Court's opinion ably explains — he has presented evidence of more than merely a lengthy incarceration. Indeed, his testimony that he has been violently assaulted during his confinement[8] and denied medical care absent a court order is

---

[7] It's worth noting, too, that in articulating the harms an accused suffers as a result of pre-trial incarceration, aside from the manner in which it hinders the preparation of his defense, the Supreme Court has described those harms in terms that seem quaint given modern jail conditions in at least some portions of this state: "The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time." *Barker*, 407 U.S. at 532-533 (footnote omitted). Thus, our assumption that a defendant must show something more than lengthy pre-trial incarceration in order to show "oppressive" incarceration may also be based on outmoded assumptions about what entails "factors beyond those that necessarily attend imprisonment." And to the extent that we do require a defendant to make such a showing, we should assume that evidence that a pre-trial detainee is experiencing conditions of detention qualitatively worse than the "enforce[d] idleness" described in *Barker* constitutes evidence of "oppressive" incarceration.

[8] The Georgia Constitution explicitly protects the right not to be abused

37

particularly disturbing and — as the Court's opinion today recognizes — necessary for the trial court to consider in its speedy-trial analysis on remand. But when the issue is properly presented, we should examine our precedent regarding what is necessary to show prejudice for purposes of the *Barker* factors.

In the meantime, where, as here, the case has yet to be tried, a remand for a new order such as that we issue today further delays the trial of the case. This means that a defendant — who stands merely charged, not convicted — continues to sit in jail. And "in evaluating the presumptive prejudice that is caused simply by the passage of time, courts look to the total elapsed time since the speedy trial rights attached, and that time is increasing with every passing day." *Phan v. State*, 287 Ga. 697, 701 (699 SE2d 9) (2010) (Nahmias, J., concurring). Thus, any delay in the issuance of a new order itself may strengthen the case for dismissal. See *Williams v. State*, 277 Ga. 598, 601 (1) (d) (2004) (592 SE2d 848) (2004)

---

while incarcerated. See Ga. Const. of 1983, Art. I, Sec. I, Para. XVII ("nor shall any person be abused in being arrested, while under arrest, or in prison").

("[G]reater pretrial delays simultaneously increase the degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice to his or her ability to present a defense."). "In short, after this case is remanded, time will not be on the State's side[.]" *Phan*, 287 Ga. at 701 (Nahmias, J., concurring); see also *Ruffin*, 284 Ga. at 66 (3) (noting in affirming denial of motion to dismiss on speedy-trial grounds that "the clock is still ticking" and "any further delay in bringing [defendant] to trial not attributable to [defendant] runs a serious risk of violating [defendant's] right to speedy trial").