NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: July 1, 2025

S25A0788.  KITCHENS v. THE STATE.

WARREN, Presiding Justice.

Appellant Deonte Kitchens was convicted of malice murder and other crimes in connection with the shooting death of Alveno Culver.[1] Kitchens filed a motion for new trial claiming, among other

---

[1] Culver was killed on October 29, 2011.  In November 2015, a Bibb County grand jury indicted Kitchens and Kelvin Carswell for various crimes in connection with Culver's death.  Specifically, Kitchens was indicted for malice murder, two counts of felony murder, three counts of violating the Street Gang Terrorism and Prevention Act,  possession of a firearm during the commission of a felony, and possession of a firearm by a first-offender probationer.  Kitchens was tried alone from September 26 to 30, 2016. Carswell testified for the State at Kitchens's trial; his case is not part of this appeal.  The jury found Kitchens guilty of all counts, and the trial court sentenced him to serve life in prison without the possibility of parole for malice murder, 15 consecutive years in prison for each gang count, 5 consecutive years in prison for possession of a firearm during the commission of a felony, and 5 concurrent years in prison for possession of a firearm by a first-offender probationer.  The trial court purported to merge the felony-murder counts, but those counts were actually vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 374 (434 SE2d 479) (1993).  Kitchens filed a timely motion for new trial, which he amended through new counsel in February 2022.  After an evidentiary hearing in March 2022, the trial court denied the motion in

things, that the State violated his constitutional right to a speedy trial. The trial court rejected that claim and ultimately denied the motion. Kitchens now appeals, raising several enumerations of error, including the speedy-trial claim. As discussed below, the trial court's ruling on this claim was based on a clearly erroneous finding about a material fact, as well as several significant misapplications of law. We therefore vacate in part the trial court's order denying Kitchens's motion for new trial and remand the case for the court to properly address the speedy-trial claim.[2]

1. We begin with the legal principles underpinning the analysis of a speedy-trial claim. The Sixth Amendment to the United States Constitution guarantees criminal defendants "the right to a speedy . . . trial," among other things. A defendant's claim that the State violated this constitutional right is analyzed under

---

January 2025. Kitchens filed a timely notice of appeal, and the case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

[2] We do not address Kitchens's remaining enumerations of error. See *Redding v. State*, 313 Ga. 730, 730 (873 SE2d 158) (2022); *Goins v. State*, 306 Ga. 55, 55 n.1 (829 SE2d 89) (2019). Kitchens may raise them again in a renewed appeal if the trial court rejects the speedy-trial claim on remand.

2

the two-part framework set forth in *Barker v. Wingo*, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and refined in *Doggett v. United States*, 505 U.S. 647 (112 SCt 2686, 120 LE2d 520) (1992). See, e.g., *Nelson v. State*, 321 Ga. 460, 462 (___ SE2d ___) (2025). First, "'the trial court must determine whether the delay at issue was sufficiently long to be considered presumptively prejudicial.'" Id. at 462-463 (citation omitted). If it was, the trial court is required under the second part of the framework to apply a four-factor balancing test that examines: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay. See id. at 463.

This analysis requires trial courts to "engage in a difficult and sensitive balancing process, while bearing in mind that these four factors have no talismanic qualities and must be considered together with such other circumstances as may be relevant." *Leonard v. State*, 316 Ga. 827, 839 (889 SE2d 837) (2023) (cleaned up). It is a "'task committed principally to the discretion of the trial courts, and

it is settled law that our role as a court of review is a limited one.'" Id. (citation omitted). Thus, this Court accepts the trial court's factual findings unless they are clearly erroneous, and we review the trial court's weighing of each factor, and its ultimate judgment in balancing all four factors, for an abuse of discretion. See *Nelson*, 321 Ga. at 463. If the trial court "significantly misapplies the law or clearly errs in a material factual finding," we will affirm the trial court's exercise of discretion only if we "can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment." *State v. Pickett*, 288 Ga. 674, 679 (706 SE2d 561) (2011). See also, e.g., *Nelson*, 321 Ga. at 463. But "'[i]f the trial court would still have discretion to reach a different judgment, we remand for the trial court to reweigh the factors and exercise its discretion using the correct factual and legal analysis.'" Id. (citation omitted).

2. We now turn to the trial court's application of the speedy-trial framework in this case. As to whether the delay was presumptively prejudicial under the first part of the framework, it

is undisputed on appeal, and we agree, that the delay in this case was longer than a year, such that a presumption of prejudice arose and triggered the application of the second part of the speedy-trial framework. See *Nelson*, 321 Ga. at 464 (explaining that a one-year delay is typically presumed to be prejudicial). We therefore proceed to evaluate the trial court's analysis of the four-factor balancing test.

(a) *Length of the Delay*

"'The length of the pretrial delay *in absolute terms* plays a role in the threshold determination of presumptive prejudice.'" *Redding v. State*, 318 Ga. 225, 227 (897 SE2d 801) (2024) (citation omitted; emphasis in original). But "'it also wears another hat as one of the four interrelated criteria that must be weighed in the balance at the second stage of the *Barker-Doggett* analysis.'" Id. (citation omitted). In this respect, we have said that the presumptive-prejudice threshold and the length-of-the-delay factor are similar but separate inquiries. See id.; *Nelson*, 321 Ga. at 464. See also *Ruffin v. State*, 284 Ga. 52, 56-57 (663 SE2d 189) (2008) (explaining that "[i]t is important that trial courts not limit their consideration of the

5

lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker-Doggett* analysis").

Generally, in calculating the length of the delay, a trial court measures the delay from the time the constitutional right to a speedy trial attaches, which is the time of arrest or formal accusation or indictment, whichever occurs first, until the date on which the defendant's trial begins. See, e.g., *Nelson*, 321 Ga. at 464. And in analyzing this factor, "a court must consider 'whether delay before trial was uncommonly long,'" *Redding*, 318 Ga. at 227-228 (quoting *Doggett*, 505 U.S. at 651), meaning "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the [constitutional speedy-trial] claim," *Doggett*, 505 U.S. at 652. "'[T]he delay that can be tolerated in a particular case depends to some extent on the complexity and seriousness of the charges in that case,' and a delay may be uncommonly long when the case is 'not prosecuted with the promptness customary in such

cases.'" *Redding*, 318 Ga. at 228 (citation omitted).

Here, the trial court, "[i]n reviewing the length of the delay," noted that Kitchens was arrested on November 3, 2011; he was indicted in October 2014 and reindicted in November 2015; and he was tried from September 26 to 30, 2016. The court then said that "the time span of this delay was presumptively prejudicial to Kitchens, as any time delay of a year or more is typically considered prejudicial under the law" and concluded that "[t]his delay is properly considered against the State."

But the trial court did not expressly calculate the length of the delay. And despite setting out several dates related to Kitchens's case, it did so without indicating on which of those dates Kitchens's right to a speedy trial attached and detached. Although the parties correctly assert that Kitchens's speedy-trial right attached on the date of his arrest on November 3, 2011, and ran until his trial began on September 26, 2016, see, e.g., *Nelson*, 321 Ga. at 464, it is not clear whether the trial court calculated the length of the delay from the date of Kitchens's arrest or from one of the later dates on which

7

Kitchens was indicted and which the trial court noted in its order.[3]

Thus, we cannot determine from the trial court's order the length of time that the court used in balancing the factors.

And even if the trial court used the correct length of time between the date of Kitchens's arrest and the date on which his trial began, the court conflated its analysis of whether the delay was sufficiently long to be considered presumptively prejudicial (the threshold issue under the first part of the speedy-trial framework) with its analysis of the length of the delay (one of the factors under the second part of the framework). In this respect, the court, "[i]n reviewing the length of the delay," determined only that the delay

---

[3] It appears that the trial court did not erroneously calculate the length of the delay from the date of Kitchens's reindictment in November 2015 because if the court had done so, it likely would not have concluded that the delay from that time until his trial in September 2016 was more than a year and thus presumptively prejudicial. But there is no such indication in the trial court's order about whether the court incorrectly calculated the length of the delay from the date of Kitchens's initial indictment in October 2014 or whether the court correctly calculated the delay from the date of Kitchens's arrest on November 3, 2011.

We also note that the record does not include an October 2014 indictment. But in any event, whether Kitchens was first indicted in 2014 or 2015 is not material to the analysis of his speedy trial claim because, as discussed above, his right to a speedy trial attached when he was arrested on November 3, 2011. See, e.g., *Nelson*, 321 Ga. at 464.

was "presumptively prejudicial" and then weighed the length-of-the-delay factor against the State. And the trial court made no express findings as to whether the delay was uncommonly long—that is, the extent to which the delay stretched beyond the point of presumptive prejudice. See *Redding*, 318 Ga. at 227-228. See also *Doggett*, 505 U.S. at 652.

In sum, the trial court failed to expressly calculate the length of the delay, conflated the distinct analyses of presumptive prejudice and the length of the delay, and failed to consider whether the length of the delay was uncommonly long. These errors amounted to significant misapplications of the law. See *Nelson*, 321 Ga. at 464-465 (vacating the trial court's order denying the appellant's constitutional speedy-trial motion and remanding the case because the trial court "considered the length of the delay only with regard to the presumption of prejudice and gave no consideration to the length-of-the-delay factor: the court did not calculate the length of the delay, address whether the delay was uncommonly long, or assign weight to the length-of-the-delay factor," among other things,

9

such that the trial court "'significantly misapplie[d] the law'") (citation omitted); *Redding v. State*, 313 Ga. 730, 735 (873 SE2d 158) (2022) (vacating and remanding where the trial court failed to expressly calculate the length of the delay and did not consider the length of the delay factor separately, among other errors).

(b) *The Reasons for the Delay*

In assessing the reasons for the delay, a trial court "'must consider which party was responsible for the delay, whether the delay was intentional, and, if it was intentional, what the motive was for seeking or causing the delay.'" *Leonard*, 316 Ga. at 840 (citation omitted). Different weights should be assigned to different reasons. See id. For example, "'[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government,'" but "'an unintentional delay, such as that caused by the prosecuting attorney's mere negligence or the trial court's overcrowded docket, should be weighted less heavily.'" Id. (citation omitted). "[P]retrial delay is often both inevitable and wholly justifiable," as the State may need time to collect witnesses

and evidence against the accused. *Doggett*, 505 U.S. at 656. See also *Ruffin*, 284 Ga. at 59. And "there is more tolerance with regard to delay in a case involving serious complex charges." *Williams v. State*, 290 Ga. 24, 26 (717 SE2d 640) (2011).

Here, in considering the reasons for the delay, the trial court found that "this was a particularly complex case, which required additional investigation by the [State] to bring essential evidence to light prior to trial." Noting that many of the State's witnesses were "reticen[t]" to testify at trial "for fear of retribution," the trial court explained that "a number of witnesses gave multiple conflicting statements throughout the course of the investigation"; "it was no easy feat to locate many of the witnesses and to follow all the various leads in this case"; and there were "multiple interviews of multiple persons." The court also found that the State "discovered contraband cell phones in the jail" that Kitchens and his co-indictee used to communicate, which resulted in the State's obtaining a "wiretap order" that "brought forth additional evidence and revealed threats being discussed in relation to potential witnesses." In sum,

11

the trial court found that "[t]he entire investigation was basically ongoing . . . until the trial in 2016" and that the delay was "not deliberately designed to sabotage or to hamper Kitchen[s]'s defense nor to gain any unfair tactical advantage." The court "d[id] not weigh this factor heavily against the State."

Kitchens does not challenge the trial court's findings about the complexity of the case and the State's lengthy and extensive investigation, nor does he argue that the State deliberately attempted to delay the trial "'in order to hamper the defense.'" *Leonard*, 316 Ga. at 840 (citation omitted). The record supports the trial court's factual findings regarding the reasons for the delay, and under the circumstances of this case, we see no abuse of discretion in the court's decision to weigh this factor against the State, but not heavily so. See, e.g., *McCullum v. State*, 318 Ga. 485, 496 (899 SE2d 171) (2024) (concluding that the trial court did not abuse its discretion by weighing the reasons-for-the-delay factor against the State, but not heavily, where the record supported the trial court's findings that the case was complex and the State had difficulty

12

locating a witness, among other reasons); *Rucker v. State*, 315 Ga. 568, 579 (883 SE2d 790) (2023) (holding that the trial court did not abuse its discretion by concluding that the reasons for the delay weighed neutrally or benignly against the State, where the trial court found that the case was complex, such that "investigative delay by the State [was] acceptable," and there was no evidence that the State deliberately delayed the case to hamper the defendant's defense); *Wilkie v. State*, 290 Ga. 450, 452 (721 SE2d 830) (2012) (upholding the trial court's decision to weigh the reasons-for-the-delay factor lightly against the State where the record supported the court's finding that the case was difficult and complex, as the State obtained information that the victim was killed for insurance proceeds and was seeking and receiving records from insurance and financial institutions during the period at issue, the years prior to indictment were thus "'used for investigation,'" and there was "'no evidence that the State intentionally delayed the indictment or trial'") (citation omitted).

(c)   *Assertion of the Right*

In considering the assertion-of-the-right factor, a trial court must evaluate whether the defendant "'has asserted the right to a speedy trial in due course,'" which requires "'a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's demands to be tried immediately.'" *Rucker*, 315 Ga. at 580 (citation omitted). To invoke the right, "'the accused need not file a formal motion, though that is certainly sufficient,'" and he "'can begin demanding that the right to a speedy trial be honored as soon as he . . . is arrested.'" Id. (citation omitted). But a defendant must assert the speedy-trial right to the court; "[p]rivileged, off-the-record conversations cannot serve as a sufficient assertion of this right, as neither the trial court nor the State are put on notice of such privately made assertions until they are relayed through counsel." *Henderson v. State*, 310 Ga. 231, 237 (850 SE2d 152) (2020). And "'a defendant who fails to assert the right at any point in the trial court will have an extremely difficult time establishing a violation of his . . . constitutional right to a speedy trial.'" *Rucker*, 315 Ga. at 580 (citation omitted). See also

14

*Barker*, 407 U.S. at 532 (emphasizing that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial").

In this case, the trial court found that although Kitchens presented evidence at the hearing on his motion for new trial that he sent several letters to his pretrial counsel about his right to a speedy trial, those private communications were insufficient to invoke the right. The court also said that it "d[id] not find in the record that Kitchens ever made known to the [c]ourt any desire to avail himself of th[e speedy-trial] right," citing *Barker* for the proposition that a defendant who fails to assert the right "will have an extremely difficult time establishing a violation of that right." The trial court concluded: "As Kitchens never invoked his right to demand a speedy trial, the [c]ourt weighs this factor heavily against him."

The court correctly determined that Kitchens's private letters to his lawyer failed to put the trial court or the State on notice of an assertion of his right to a speedy trial and that, consequently, those

15

"[p]rivileged, off-the-record conversations" did not serve as a sufficient invocation of the right. *Henderson*, 310 Ga. at 237. But the trial court's finding that Kitchens *never* invoked his right to a speedy trial is clearly erroneous. The record shows (and Kitchens points out in his appellate brief) that Kitchens's pretrial counsel filed a constitutional speedy trial demand on August 8, 2014. The trial court was not required to allot significant weight to this sole, pro forma demand, which was filed nearly three years after Kitchens's arrest. See, e.g., *Barker*, 407 U.S. at 529 (explaining that courts are allowed to "weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection"); *Redding*, 318 Ga. at 229 ("'Although an accused need not demand a trial at the first available opportunity, his failure to assert his right with reasonable promptness will ordinarily weigh heavily against him.'") (citation omitted).[4]

Nevertheless, the trial court's clearly erroneous finding that

---

[4] Notably, the record does not indicate that Kitchens or his counsel pursued the constitutional speedy trial demand further.

16

Kitchens never invoked his right to a speedy trial was material to the court's decision to weigh this factor heavily against Kitchens, and if this factor is to be weighed differently in light of Kitchens's 2014 constitutional speedy-trial demand, that exercise of discretion is committed to the trial court. See *Nelson*, 321 Ga. at 466-467 (vacating the trial court's ruling on a speedy-trial motion and remanding the case where the trial court, among other things, erroneously found that the appellant first asserted his constitutional right to a speedy trial three years after his arrest and two years after indictment, when the record showed that he asserted the right two months after he was arrested, before he was indicted); *Pickett*, 288 Ga. at 677 (vacating and remanding where the trial court significantly erred in its analysis of the assertion-of-the-right factor, among other errors, and explaining that "[i]f the factor is to be weighed differently based on the particular circumstances of this case, that exercise of discretion is committed to the trial court, not the appellate courts").

(d) *Prejudice*

17

"When prejudice is presumed based on the length of a delay in trying the case, that presumption not only remains in place but 'increases in weight over time.'" *Davis v. State*, 315 Ga. 252, 258 (882 SE2d 210) (2022) (citation omitted). See also *Williams v. State*, 277 Ga. 598, 601 (592 SE2d 848) (2004) (explaining that "greater pretrial delays simultaneously increase the degree of prejudice presumed and decrease the expectation that the defendant can demonstrate tangible prejudice to his or her ability to present a defense"). However, presumptive prejudice can be counterbalanced, or even outweighed, by a defendant's failure to show evidence of actual prejudice. See *Davis*, 315 Ga. at 258. See also *Williams v. State*, 314 Ga. 671, 680 (878 SE2d 553) (2022) (explaining that "'the prejudice prong may be weighed against the defendant even in cases of excessive delay'") (citation omitted).

Actual prejudice is assessed by considering evidence of "'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence."

*Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Id. (quoting *Barker*, 407 U.S. at 532).

We have said that "[f]or the first two types of prejudice to weigh in favor of a defendant, the defendant must introduce evidence of 'oppressive pretrial incarceration or anxiety and concern' that goes 'beyond that which necessarily attends confinement in a penal institution.'" *Nelson*, 321 Ga. at 467 (citation omitted). And we have also concluded that, to show the possibility of impairment to the defense from the loss of evidence, a defendant must demonstrate what the allegedly lost evidence would have shown. See, e.g., *Redding*, 318 Ga. at 231 (holding that the trial court did not abuse its discretion by weighing the prejudice factor heavily against the defendant in the speedy-trial analysis where he failed to show how a potential witness who died prior to trial would have assisted his defense); *Henderson*, 310 Ga. at 239 (explaining that the trial court correctly determined, in considering the prejudice factor, that the

appellant had not shown that his defense was impaired by a potential witness's failure to testify at trial because the appellant presented no evidence about what that witness would have said or that he sought to secure her attendance at trial).

Here, the trial court "acknowledge[d]" that "there is a presumption of prejudice due to the passage of time" in this case, but found that Kitchens had not demonstrated actual prejudice because he had "not put forth any evidence of how his defense was harmed or impaired by the passage of time, nor ha[d] he shown that any anxiety he may have experienced was greater tha[n] that always present in such situations." Noting that Kitchens could not rely solely on presumptive prejudice, the court weighed this factor heavily against him.

The trial court properly noted that a presumption of prejudice exists in this case. But we cannot discern whether the court appropriately assessed the *degree* of presumed prejudice. That is because, as discussed above, the court did not expressly calculate the length of the delay, and as the delay increases, so does the degree

20

of prejudice that is presumed. See *Davis*, 315 Ga. at 258; *Williams*, 277 Ga. at 601. Because the trial court did not expressly calculate the length of the delay, it is unclear the degree of presumed prejudice that the court weighed in balancing the factors.

Regarding actual prejudice, Kitchens does not argue in his appellate brief that he suffered oppressive pretrial incarceration or anxiety and concern "beyond that which necessarily attends confinement in a penal institution.'" *Nelson*, 321 Ga. at 467 (citation omitted).[5] He does contend, however, that his defense was impaired by the delay because the State was able to continue to build its case against him and because an "eyewitness useful to [the] defense" became unavailable during the delay. Kitchens cites no authority (and we have identified none) showing that the State's continued

---

[5] Nor does Kitchens ask us to reconsider our precedent requiring a defendant seeking to show oppressive pretrial incarceration or anxiety and concern to introduce evidence that goes "'beyond that which necessarily attends confinement in a penal institution.'" *Nelson*, 321 Ga. at 467 (citation omitted). See also id. at 473-475 (Peterson, CJ, concurring) (asserting that our precedent has incorrectly required defendants to "show something more than typical conditions of incarceration in order for their pre-trial incarceration to be considered 'oppressive' for purposes of showing prejudice from pre-trial delay" and arguing that we should reconsider this line of precedent in a case where the issue is properly presented).

21

investigation and development of its case constitutes the sort of impairment to the defense contemplated by the speedy-trial framework. Cf. *Doggett*, 505 U.S. at 654 (explaining that impairment to "the [accused's] defense" is serious, "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system'") (quoting *Barker*, 407 U.S. at 532). And as to the alleged eyewitness, the trial court correctly determined that at the motion for new trial hearing, Kitchens offered no evidence showing what she would have said, had she been called to testify at trial. See, e.g., *Redding*, 318 Ga. at 231; *Henderson*, 310 Ga. at 239. Thus, the record supports the trial court's finding that Kitchens failed to demonstrate actual prejudice.

As the trial court noted in its order, we have said that an appellant "'cannot rely solely on . . . presumptive prejudice.'" *Rucker*, 315 Ga. at 582 (citation omitted). But given the long delay in this case and the increased presumed prejudice flowing from that delay, the trial court might have weighed the prejudice factor less heavily against Kitchens if it had properly calculated and considered the

length of the delay before assessing the degree of prejudice presumed from the delay. See *Williams*, 277 Ga. at 601 (concluding that "in light of the extraordinarily long delay in bringing [the defendant's] indictment to trial, [his] failure to make a particularized showing of the oppressiveness of his lengthy pretrial incarceration and of his decreased ability to present a defense at trial must not be weighed heavily against him").

(e) In sum, the trial court made a clearly erroneous finding that was pivotal to the weight it assigned to the assertion-of-the-right factor. The court also misapplied the law in several significant ways: by failing to expressly calculate the length of the delay, conflating the distinct analyses of presumptive prejudice and the length of the delay, and failing to consider whether the length of the delay was uncommonly long.

We cannot conclude that, if the trial court had not made the clearly erroneous finding about Kitchens's assertion of his right to a speedy trial and had not substantially misapplied the law in the ways discussed above, the court necessarily would have ruled that

there was no violation of the constitutional right to a speedy trial. Because "it is 'imperative' that 'the trial court enter findings of fact and conclusions of law consistent with *Barker*,'" *Goins v. State*, 306 Ga. 55, 57-58 (829 SE2d 89) (2019) (citation omitted), and because "'[i]t is not the role of an appellate court to weigh the *Barker* factors in the first instance,'" *Nelson*, 321 Ga. at 466 (citation omitted), we vacate in part the trial court's order denying Kitchens's motion for new trial and remand the case for the court to address the speedy-trial claim in a manner consistent with this opinion. See id. at 469 (vacating the trial court's order denying the appellant's motion to dismiss the indictment on constitutional speedy-trial grounds and remanding the case "[b]ecause the trial court would not have been compelled to deny [the a]ppellant's motion to dismiss if it had used the correct factual and legal analysis"); *Redding*, 318 Ga. at 227 (vacating and remanding because, "[w]hile the trial court may be authorized to deny [the defendant's] speedy-trial motion after assigning weight and balancing anew the four factors in accordance with the applicable law and directions outlined in this opinion, we

24

[could not] say the trial court [was] necessarily compelled to do so")
(footnote omitted); *Pickett*, 288 Ga. at 680 (holding that the Court of
Appeals should have vacated the trial court's judgment and
remanded where this Court could not conclude that, if the trial court
had not made factual and legal errors, it necessarily would have
ruled that the appellant's right to a speedy trial was violated).[6]

*Judgment vacated in part and case remanded with direction.*
*Peterson, CJ, and Bethel, Ellington, McMillian, LaGrua, Colvin, and*
*Pinson, JJ, concur.*

---

[6] We note that there was also a significant post-conviction delay in this
case, as more than eight years elapsed before the trial court ruled on Kitchens's
motion for new trial. See *Owens v. State*, 303 Ga. 254, 259 (811 SE2d 420)
(2018) (explaining that "even if long-delayed appeals rarely result in outright
reversals of convictions or only retrials or resentencings, these extended and
unjustified delays in resolving criminal cases make our State's criminal justice
system appear unfair and grossly inefficient"). Although Kitchens mentions
this post-conviction delay in his appellate brief, he does not contend that his
right to due process was violated. See *Harper v. State*, 318 Ga. 185, 188 (897
SE2d 818) (2024) (assessing an appellant's claim that the delay between his
conviction and his direct appeal violated his right to due process); *Chatman v.*
*Mancill*, 280 Ga. 253, 257 (626 SE2d 102) (2006) (distinguishing speedy-trial
claims and speedy-appeal claims and explaining "that speedy appeal claims
arise under the Fifth Amendment and that many of the interests protected by
the Sixth Amendment are not implicated in the context of an appellate
proceeding where the defendant has already been convicted of an offense")
(footnote omitted). But the trial court should promptly rule on Kitchens's
speedy-trial claim on remand to avoid further delay in this case.